### CASSERLY v. WHEELER.

(Circuit Court of Appeals, Ninth Circuit. August 7, 1922. Rehearing Denied October 9, 1922.)

#### No. 3772.

1. **Appeal and error ☞231(9)—General exception to charge held sufficient, where charge complained of deliberate, and not inadvertent.**

Where charge that jury must find for plaintiff in some amount was given with deliberation, and not inadvertently, general exception to the charge *held* sufficient to bring the question of the correctness of such instruction before the appellate court for review.

2. **False imprisonment ☞11—Member of draft board held without authority to arrest person on suspicion.**

Under Selective Service Act, §§ 1, 2 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 2044a, 2044b), the regulations thereunder, and Pen. Code Cal. §§ 836, 837, 847, a member of a draft board had no authority to arrest mariner applying for permit to go to sea, or direct police officers to arrest him, because of third person's suspicion, communicated to him, that applicant was seeking to avoid military service by applying under an assumed name.

3. **False imprisonment ☞11—Arrest without due process of law not justified by existence of war.**

· Under Const. U. S. Amend. 4, 5, and Const. Cal. art. 1, § 13, the arrest of a person without due process of law was not justified by the existence of a state of war, especially in view of Const. Cal. art. 1, § 12, making military power subordinate to civil power.

4. **False imprisonment ☞4—Member of draft board, acting without malice, not immune from liability.**

That a member of a draft board, arresting on suspicion one applying for a permit to go to sea, was acting without compensation in the performance of what he believed to be his official duty and without malice did not relieve him of liability for false imprisonment.

In Error to the District Court of the United States for the Southern Division of the Northern District of California; Frank S. Dietrich, Judge.

Action at law by Rey B. Wheeler against J. B. Casserly to recover damages for false imprisonment. Judgment for plaintiff, and defendant brings error. Affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

John T. Williams, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal., for plaintiff in error.

Devoto, Richardson & Devoto and Anthony S. Devoto, all of San Francisco, Cal., for defendant in error.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

MORROW, Circuit Judge. The parties to this action will be designated plaintiff and defendant, as in the court below.

The plaintiff below was, in September, 1918, registered under the Selective Service Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 2044a–2044k) with the local board at Seattle, state of Washington, and was given a deferred classification as a mariner. He moved to San Francisco, secured employment as a mariner with the Pacific Mail Steamship Company, and on September 18, 1918, under the instructions of an officer of that company, he went before the San Francisco local board No. 1 to obtain a permit to enable him to go to sea. He already had a passport.

The defendant was the only member of the board present. Plaintiff submitted to him his registration and classification cards. Defendant directed the plaintiff to send a telegram to the Seattle board, requesting the granting of the necessary permission to go to sea. The plaintiff sent such a telegram from the Western Union office on Powell street.

When the plaintiff appeared at the Western Union office with the telegram, one of the clerks, Gertrude R. Smith, noticed the character of the telegram, and thought she recognized in plaintiff another person by the name of Nolan, who was wanted for some offense, and, believing that he was endeavoring to obtain a passport under an assumed name to go to sea and avoid service in the War, thus violating the Selective Service Act, she reported the matter to her superiors, who, in turn, instructed her to communicate with the Bureau of Investigation, Department of Justice, in the Federal Building, which she did.

The Department of Justice, through Mr. H. H. Dolly, special agent of the bureau, then notified the defendant by telephone that, when plaintiff called for a reply to the Seattle telegram, defendant should hold him. It being after 5 o'clock and after office hours when plaintiff appeared, the regular police officer detailed to the draft board was not there. The defendant requested plaintiff to wait a few minutes. After waiting about 10 minutes, plaintiff advanced toward the door of the room in which he had been sitting to step outside, when defendant blocked the way, saying, "I will have to detain you here." The defendant had, during the wait, telephoned to a San Francisco police station, requesting that two policemen be sent to the office of the board to make an arrest. In response to this request, two officers came, and defendant indicating that the plaintiff was the person to be arrested, he was arrested and taken to the city prison, where he was locked up over night.

The defendant testified that he made the arrest as a member of the draft board; that he simply followed telephone instructions from Mr. Dolly, the special agent of the Department of Justice.

The plaintiff testified that he attempted to question the defendant as to what he was charged with; as to whether he could telephone to his relatives and an attorney, and whether he could give bail; that the defendant gave him absolutely no satisfaction and made no inquiries as to his identity; that the plaintiff could have identified himself positively in a few minutes by communicating with his employer, or his friends in San Francisco, or his relatives, his sister being at the time a teacher in the Alameda High School and his mother and sister residents of Alameda county. He asked the police officers upon what charge he was being taken. He persisted in the inquiry, and the officers told him:

"We can tell you nothing about it. You will have to make further inquiry when we get down to the station."

Plaintiff had in his possession at the time his identification papers, which consisted of a seaman's passport, a waterfront passport, and two registration cards. The latter he had submitted to the defendant when he applied for the permission to go to sea. At the police station plaintiff asked if there was any charge against him. They said, "Well, you cannot find out anything of that kind here"—or words substantially to that effect.

The following morning the plaintiff was taken out by one of the representatives of the Bureau of Investigation, who, after lengthy questioning, became satisfied that a mistake had been made, and released the plaintiff between 3:30 and 4:30 that afternoon, who thereafter appeared before the local board, secured his permit, and departed. He had been under arrest about 22 hours.

The plaintiff, on September 11, 1919, filed a complaint against the defendant in the superior court of the city and county of San Francisco, claiming damages against him in the sum of $10,000 for false imprisonment. Thereafter the cause was removed to the District Court of the United States in and for the Northern District of California. A trial was had before the court and a jury, and at the close of the trial the court gave to the jury an instruction for a verdict in favor of plaintiff in some amount, submitting to the jury the single question as to the amount of damages. Such a verdict was returned, awarding plaintiff the sum of $750 as damages for such false imprisonment, and judgment was entered thereon in favor of the plaintiff.

Defendant prosecutes this writ of error to reverse that judgment, claiming that the court erred in so instructing the jury.

[1] It is obvious from the record of proceedings that the instruction of the court to the jury that they must find for the plaintiff in some amount was given with deliberation, and not inadvertently. We shall therefore treat the general exception to the charge of the court as sufficient in this case to bring that question before this court for review.

[2] The defendant, represented by the United States attorney, contends that the case is governed by the Selective Service Act, entitled "An act to authorize the President to increase temporarily the military establishment of the United States," approved May 18, 1917 (40 Stat. 76). The act provides, in section 1 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 2044a), that "in view of the existing emergency, which demands the raising of troops in addition to those now available, the President * * * is * * * authorized" among other things to select and mobilize a national army (section 2 [section 2044b]) "by voluntary enlistment, or if and whenever the President decides that they cannot be effectually so raised or maintained, then by selective draft. * * * Such draft as herein provided shall be based upon liability to military service of all male citizens, or male persons not alien enemies who have declared their intention to become citizens, between the ages of twenty-one and thirty years, both inclusive, and shall take place and be maintained under such regulations as the President may prescribe not inconsistent with the terms of this act."

Among the regulations prescribed by the President for the raising of this army were regulations providing for the registration (section 53) and classification (section 70) of all persons subject to registration. The classification was to be in five classes, in accordance with the economic interests of the nation. In the fourth class (section 78) were to be placed registrants found to be mariners, actually employed in the sea service. The plaintiff was registered with the local registration board at Seattle. He did not claim exemption. He was about 22 years of age and registered as a mariner, and classified and recorded in class 4. His employment brought him to San Francisco. The steamship Ecuador, upon which he was employed, was about to set out on its usual voyage to a foreign port. He was directed by an officer of the company, as he had been on prior occasions, to go to the local registration board and secure a permit to go to sea. Section 156 of the Regulations provided for such a permit as follows:

"If the applicant is so far distant from his own local board that it would work hardship for him to apply thereto for a permit, he may apply to the nearest local board to investigate his case, and, at the registrant's expense, to telegraph or write to the registrant's local board for authority to issue the permit, with the recommendation as to the advisability of issuing. Upon receipt of such authority, the local board to which the registrant applies may issue the permit."

The plaintiff, with proper identification papers in his possession, which he had submitted to the defendant when he applied for the permit to go to sea, was pursuing the course here required, when he was arrested. The defendant was a member of the local registration board in San Francisco. We cannot find in the Selective Service Act that he was authorized to make the arrest or direct the police officers to take the plaintiff into custody and lock him up in prison. There is no evidence that the plaintiff's appearance or conduct furnished any reasonable suspicion that he was subject to arrest.

Counsel for the defendant refers to section 135 of the Regulations for the authority of the board to proceed against a delinquent previous

to his adduction into the military service, when the board is authorized to require the delinquent to file a questionnaire. But in this case the plaintiff was not a delinquent, and had already filed his questionnaire with the local board at Seattle. But, even in a case of delinquency, the board is not authorized to make or direct an arrest of the delinquent. Whenever the delinquency appears to have been willful, the board is directed to report the case to the nearest representative of the federal Department of Justice.

Section 130 of the Regulations is also referred to as furnishing some authority in delinquency proceedings, justifying the defendant's action in this case. The section provides that "the names of persons who fail to return their questionnaire, or to report for physical examination when ordered to do so, shall forthwith be sent to the local police authority" for the investigation therein provided. Manifestly this section is not applicable to this case, and we find no authority anywhere in the statute or in section 284 of the Regulations, or in any of the Regulations, for an arrest for any cause upon the direction of the board of registration, or by a member of such board.

[3] It is urged that this arrest was made at the high tide of the prosecution of the war, when the nation was exerting every effort to reach a victorious conclusion; that "all parties concerned, plaintiff, defendant, policemen, and operatives, were within the sweep of the President's comprehensive war jurisdiction in securing the muster into the military service of all persons liable." This is all very true; but the civil law had not been suspended. The military power was subordinate to the civil power. Section 12, art. 1, Constitution of California. The constitutional right of the citizen not to be deprived of his liberty without due process of law (articles 4 and 5 of the Amendments to the Constitution of the United States; section 13, article 1, Constitution of the state of California) was just as secure to the citizen at the time of plaintiff's arrest as at any time since the organization of the government. What is due process of law in a case of this character?

"When a person knows, or has reasonable ground to suspect, that a criminal offense has been committed, he may go before a magistrate or other officer competent to issue warrants, and lay before him the information which he has, supported by such witnesses as he may be able to produce, setting forth the grounds on which the application for a warrant is based; whereupon the magistrate or officer, if the showing is sufficient, is authorized to issue a warrant for the apprehension of the accused." 5 Corpus Juris, 389.

"There can be no arrest without due process of law. An arrest without a warrant has never been lawful, except in those cases where the public security requires it; and this has only been recognized in felony, and in breaches of the peace committed in presence of the officer." Chief Justice Campbell, in the matter of Sarah Way, 41 Mich. 299, 304, 1 N. W. 1021, 1023; 5 Corpus Juris, 395.

This is substantially the law in the state of California. The Penal Code of California provides, in section 836, that a peace officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person: (1) For a public offense committed or attempted in his presence. (2) When a person arrested has committed a felony, although not in his presence. (3) When a felony

has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it. (4) On a charge, made upon a reasonable cause, of the commission of a felony by the party arrested. (5) At night, when there is reasonable cause to believe that he has committed a felony.

Section 837 provides a private person may arrest another: (1) For a public offense committed or attempted in his presence. (2) When the person arrested has committed a felony, although not in his presence. (3) When a felony has been in fact committed, and he has reasonable cause for believing the person arrested to have committed it.

Section 847 provides that a private person who has arrested another for the commission of a public offense must, without unnecessary delay, take the person arrested before a magistrate, or deliver him to a peace officer. Plaintiff in this case does not come within any of these statutory exceptions.

[4] The attention of the court is called to the fact that the defendant was serving without compensation in the performance of what he believed to be his official duty, and that he was acting without malice. This will be conceded, but does not justify the invasion of the plaintiff's constitutional right to be at liberty until he should be arrested according to law. In Ex parte Milligan, 4 Wall. 2, 120 (18 L. Ed. 281), the Supreme Court of the United States, through Mr. Justice Davis, stated the constitutional protection afforded the citizen in the following terms:

"The Constitution of the United States is a law for rulers and people, equally in war and in peace, and covers with the shield of its protection all classes of men, at all times, and under all circumstances. No doctrine, involving more pernicious consequences, was ever invented by the wit of man than that any of its provisions can be suspended during any of the great exigencies of government. Such a doctrine leads directly to anarchy or despotism, but the theory of necessity on which it is based is false; for the government, within the Constitution, has all the powers granted to it, which are necessary to preserve its existence; as has been happily proved by the result of the great effort to throw off its just authority."

The judgment of the District Court is affirmed.