James Vernon **WARD**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 18286.

United States Court of Appeals
Ninth Circuit.

April 10, 1963.

Rehearing Denied May 15, 1963.

---

Morris N. Karch, Los Angeles, Cal., for appellant.

Francis C. Whelan, U. S. Atty.; Thomas R. Sheridan, Asst. U. S. Atty., Chief, Criminal Section; and Phillip W. Johnson, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES and MERRILL, Circuit Judges, and BURKE, District Judge.

BARNES, Circuit Judge.

Appellant was indicted on four counts, tried and found guilty on each. Count I charged him with a conspiracy to steal government income tax refund checks from the United States mail and to forge and cash them; 18 U.S.C. § 1708; 18 U.S.C. §§ 371, 494, 495. Count II charged the substantive offense of stealing from the United States mail on February 24, 1962; Count III with having such stolen checks in his possession on February 24, 1962; and Count IV with having stolen one specific check from the mails on that date.

Thirty-four other counts against seven defendants contained in the same indictment did not concern defendant Ward, and are of no concern to this appeal. Ward was sentenced to five years, con-

currently, on Counts I and IV, and to five years, concurrent to each other (but consecutive to the sentence on Counts I and IV), on Counts II and III.

There is but one real point involved in this appeal. Was the arrest, personal search, and discovery of Exhibits 22 to 51, inclusive (the government checks) on appellant's person on February 24, 1962, illegal, and a denial of due process, that made the evidence obtained inadmissible and if that be so, the convictions based thereon improper because of insufficiency of evidence to support?

The arrest was made by Postal Inspectors Peterson and Smoot on Saturday, February 24, 1962, at about 4:15 P.M. on the premises of the Union Railway Passenger Terminal, Los Angeles, California, as appellant was leaving that place of employment for an automobile parked in the parking lot on the Union Railway Passenger Terminal grounds. At least one other postal inspector was in the vicinity, but no State peace officers, Federal agents, or Marshals were present.

No warrant was obtained for this arrest. At the time of the arrest, however, Inspectors Peterson and Smoot knew that a warrant for the arrest of appellant for a violation of 18 U.S.C. § 1708 (possession of contents of stolen mail) had been issued by the United States Commissioner in Los Angeles. The inspectors also had the following knowledge:

(1) That certain government checks had been stolen from the mails carried on railway trains in the vicinity of Los Angeles at various times during the previous year;

(2) that appellant had been employed at the Union Railway Passenger Terminal in a position where he had contact with and handled mail bags; sometimes those containing government checks;

(3) that the warrant for the arrest of appellant for possession of material stolen from the United States mail had been outstanding since January 30, 1962;

(4) informant "A" had told them that appellant had stolen a quantity of United States Treasury checks;

(5) the same informant "A" had told them *he had been told* by "B" (a) that "X" and the appellant had stolen a sack of checks from a train before the sack could reach the Post Office; (b) that "B" and the appellant had in their possession $30,000 to $40,000 worth of stolen checks;

(6) that said informant "A" had been proved reliable in information given to *another* federal law enforcement agency;

(7) that informant "C" had allegedly cashed United States Treasury checks with false endorsements after receiving them from "D", who had told "C" he ("D") was receiving them from a person named Ward living at 1163 West 37th Drive, Los Angeles;

(8) that appellant Ward lived at that address;

(9) that informants "A" and "C" had picked appellant's photograph from a group of photographs;

(10) that appellant was the *only* person in the mail-handling crew at the Union Railway Passenger Terminal who had the opportunity to handle incoming mail without other persons being present;

(11) that during the previous year numerous previous thefts of baggage, express shipments and railroad property had taken place at said Terminal, and appellant was a "suspect";

(12) on February 24, 1962, the day of the arrest, the postal inspectors had caused three bags or sacks of mail to be placed on a Union Pacific train (No. 103) at Riverside, California, after personally taking them there from Los Angeles. The contents of each sack were noted and recorded. That said train with its three sacks arrived at Los Angeles a little after 11:30 A.M. That thirty-eight minutes later *two* sacks were delivered to the Terminal Annex Post Office, adjoining the Union Railway Passenger Terminal. They were taken immediately to the Postal Inspector's office and found intact, with their contents intact;

(13) between an hour and twenty minutes and an hour and forty minutes later the third sack was delivered to the Ter-

minal Annex Post Office, coming in with mail from another train from Salt Lake City, Utah. It was immediately examined, and thirty of the listed checks were found missing.

(14) The transfer of the sacks from the train station to the physically adjoining Terminal Annex Post Office was made by the baggage and mail handlers employed by the Los Angeles Union Railway Passenger Terminal of which appellant was one.

(15) It was not until this time (between 1:45 and 2:15 P.M. on Saturday afternoon) that the postal inspectors decided to arrest appellant. (Tr. p. 50, ll. 15–25.)

(16) Inspector Peterson had "personal knowledge" appellant "was looking for some checks." [1]

(17) The inspectors had a photograph of appellant.

(18) From experience with mail thefts, the inspectors knew that frequently stolen articles are "cashed" somewhere around the premises where stolen until the thieving employee leaves the premises at the conclusion of his work. The premises where this known theft had taken place, on February 24, 1962, were placed under surveillance, together with the parking lot where the vehicle which furnished appellant's transportation was parked. The arrest was then made at 4:15 P.M., "rather than the immediate time that we missed our checks, because we were afraid they might be secreted." [2] (Tr. p. 63, ll. 8–11.)

With this information and knowledge, Inspector Peterson made the arrest in the following manner:

"Q. What happened at the moment of the arrest of the defendant Ward?

"A. As he left I approached him and I asked him, 'Are you James Vernon Ward?'

"He actually gave a grunt. And I asked three times, and at that time, not getting any kind of an answer, I identified myself as a postal inspector and told him he was under arrest for possession of stolen mail.

"Q. Then what happened?

"A. I told him we would like to search him, certainly, to defend ourselves, to see if he had any arms or anything of this nature.

"He resisted, and I attempted to put handcuffs on him, and he resisted even more. There was a little jostling. I exuded my gun and told him to settle down, that he was under arrest and that we would have to search him."

In addition to the knowledge had by the postal inspectors prior to the arrest, the following evidence was introduced at the trial. It has no evidentiary value, of course, as to the validity of the arrest, or the search incidental to the arrest.

The stolen letters (Exhibits 22 through 51) were found in the upper left inside coat pocket of appellant, wrapped in a paper towel. Only one had been opened, the one containing a check payable to Barbara Shepherd, the basis of Count IV.

Appellant admitted to taking the checks (a) before seven witnesses, after his arrest on February 24, 1962. (b) He admitted it again, in the presence of his attorney on February 26, 1962; (c) On March 8, 1962, he admitted the total was about $175,000 in checks "taken from the baggage mail cars as they came in." (d) On March 12, 1962, he gave a statement containing a detailed reference to dates, places and names of individuals who had allegedly been involved in various thefts from the mails.

■  There apparently is no federal law authorizing postal inspectors to make official arrests, i. e., because of their employment. And see United States v. Helbock, D.C.Or., 76 F.Supp. 985. While a warrant for appellant's arrest was outstanding, it was not used or relied upon

---

1. Not otherwise explained.
2. This testimony was properly stricken, as the conclusion of the witness, at the trial. It would be admissible, however, on a motion to suppress, to show the arresting officers' knowledge.

here, and appellant was arrested for a crime allegedly committed on that day, and continuing to and including the precise moment of arrest.

"The procedure for making arrests which obtains under the state practice is applicable to arrests made for crimes against the United States." Cline v. United States, 9 Cir., 1925, 9 F.2d 621, and cases cited; "No act of Congress lays down a general federal rule for arrest without warrant for federal offenses." United States v. Di Re, 1948, 332 U.S. 581 at 591, 68 S.Ct. 222, at 227, 92 L.Ed. 210.

But whether the federal law violation is a crime or not, and whether it is or is not a felony, depends upon the federal statute.

■ Section 1 of Title 18, United States Code, divides federal "offenses" into felonies, misdemeanors, and petty offenses. A felony is "[a]ny offense punishable by death or imprisonment for a term exceeding one year." Appellant was arrested for the crime of stealing checks from the United States mails, or having in his possession checks stolen from the United States mails. 18 U.S.C. § 1708. As last amended in 1952 (66 Stat. 314), the punishment for violation of this section is imprisonment for "not more than five years." Thus appellant was arrested for a felony.

Under California law, two kinds of arrests are authorized—an arrest by a peace officer (Cal.Penal Code § 836) and an arrest by a private person (Cal.Penal Code § 837). Only peace officers can arrest in obedience to a warrant. Both sections originally had identical subsections (3), authorizing either a peace officer or a private person to arrest without a warrant: "When a felony has in fact been committed, and he has reasonable cause for believing the person to be arrested has committed it."

The postal inspectors are not "peace officers," as that term is defined by §§ 7 and 817 of the California Penal Code. But this is of no consequence, for the same right exists in private citizens to make arrests without warrant, as in peace officers, provided subsection (3) (or some other subsection) of California Penal Code § 837 is satisfied. Subsection (3) has two requirements: (a) a felony must have been committed by someone; and (b) "reasonable cause must exist" to believe the person arrested committed the felony.

■ Any fair reading of the evidence hereinbefore set forth convinces us that reasonable cause for the arrest of appellant existed. "Reasonable cause for arrest" is no esoteric formula. Would the information and knowledge the arresting person had lead a person of ordinary reasonable judgment, intelligence, care and prudence, to believe the person to be arrested had committed the felony? Mackie v. Ambassador Hotel & Inv. Corp., 1932, 123 Cal.App. 215, 11 P.2d 3; People v. Boss, 1930, 210 Cal. 245, 290 P. 881.

The belief may amount only to an honest and strong suspicion that the person arrested is guilty of a felony. Taylor v. Fine, D.C., 1953, 115 F.Supp. 68; United States v. Bell, D.C., 1943, 48 F. Supp. 986.

Mere suspicion alone is not enough. Casserly v. Wheeler, 9 Cir. 1922, 282 F. 389; Poldo v. United States, 9 Cir. 1932, 55 F.2d 866; Cook v. Singer Sewing Machine Co., 1934, 138 Cal.App. 418, 32 P.2d 430.

"Probable cause is a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in belief that charge is true." People v. Brite, 1927, 9 Cal.2d 666, 72 P.2d 122.

■ We agree with the trial judge that reasonable cause was established by substantial evidence sufficient to authorize appellant's arrest without a warrant.

Appellant urges that the delay in the arrest from about 2:00 or 2:15 P.M. to 4:15 P.M. should be fatal to the inspectors' right to make an arrest. There existed a valid reason for the two hour delay, as explained by the arresting individuals. It would be easy for ivory tower experts to lay down hypothetical

guide lines and limits of minutes and hours; but each case must rest on its own facts. Some variable area of judgment must be allowed in each case to each person making the arrest. We think no unfair or unlawful time element here exists.

We do not find Ogulin v. Jeffries, 121 Cal.App.2d 211, 263 P.2d 75, controlling, as it relates to misdemeanors, and specifically states a different rule applies to felonies. An immediate arrest, once probable cause for arrest exists, is not essential to validity. Otherwise the arresting officer comes to his conclusion as to the existence of evidence preponderating toward probable cause at his own peril. Cf. Dailey v. United States, 5 Cir. 1958, 261 F.2d 870, certiorari denied, 1959, 359 U.S. 969, 79 S.Ct. 881, 3 L.Ed. 2d 836.

Appellant also urges that because the United States Commissioner's office was but three blocks away from the Terminal Annex Post Office, the inspectors should have obtained a warrant for appellant's arrest on that Saturday afternoon. It is undoubtedly true that it would have been better had they done so—a great deal of time, effort, and perhaps this appeal, could have been avoided. But this *was* Saturday afternoon, and while the United States Commissioner and a United States Marshal could probably have been reached *somewhere* that afternoon or evening, the possibilities that the proceeds of the theft could have been hidden, or that evidence might have been destroyed, were in the inspectors' minds, and rightly so. As the able trial court observed, the fact that the postal inspectors would have followed a much wiser and better course had they obtained a warrant and had it served by a United States Marshal, "does not vitiate" necessarily the procedure they did follow.[3] "Some flexibility will be accorded law officers engaged in daily battle with criminals for whose restraint criminal laws are essential." United States v. Rabinowitz, 1950, 339 U.S. 56, 65, 70 S.Ct. 430, 435, 94 L.Ed. 653.

Appellant also urges, conceding the citizen's authority to arrest, that the arrest was not made properly, nor in accordance with California Penal Code § 841, because no mention was made to appellant of the cause of arrest and the *authority* to make it. The best answer is the exception written into the Code section—*except* when the person arresting has reasonable cause to believe the arrested person is actually engaged in the offense. (Emphasis added.) The appellant *was* so engaged when arrested. People v. Jaurequi, 1956, 142 Cal.App.2d 555, 298 P.2d 896. And, as we have seen, there was reasonable cause to believe appellant was at that moment so engaged; and the arresting individuals did so believe.

In addition, the statement made by Inspector Peterson gave the appellant, a person regularly handling United States mail, a good idea of the charge against him; the cause for his arrest; and the authority to arrest him. No express statement of intent is required. Lowry v. Standard Oil Co. of Calif., 1942, 54 Cal.App.2d 782, 130 P.2d 1; People v. Score, 1942, 48 Cal.App.2d 495, 120 P.2d 62; People v. Pool, 1865, 27 Cal. 572.

We have not here passed upon the right of the postal inspectors, other than as private citizens, to make an *arrest*. The government urges they do. See 39 U.S.C. § 3523(a) (2) (k), where it is implied that they have such authority. We do not meet that question, as it is here unnecessary. Cf. Muldrow v. United States, 9 Cir., 1960, 281 F.2d 903; and Townsend v. United States, 4 Cir. 1959, 271 F.2d 445.

---

3. As the court said: "If the test were could it have been done better, then in *every case where a warrant were not procured, where it was practical to do so, and properly served, then the motion to suppress would be granted.*

"These cases come up where it wasn't done in the best possible manner, and the question is: *Was it done properly?*"

On the other hand, a *search* by a postal inspector is authorized by statute. 39 U.S.C. §§ 903 and 905. Was the result of the search admissible, apart from the lawful citizen's arrest? Again, we need not go into this aspect of the case, because we conclude, as did the trial court, there was a valid, lawful, citizen's arrest, under applicable California law for the suspected commission, past and present, of a felony; that such a felony had in fact been committed, and the search there made was incidental to the lawful arrest, and proper. It produced Exhibits 22 to 51, inclusive. Agnello v. United States, 1925, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145.

The evidence was properly obtained, and properly admitted into evidence. Finding no error, we affirm the convictions.