Eric L. MONTGOMERY, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 19124.

United States Court of Appeals
Eighth Circuit.

Nov. 26, 1968.

Rehearing Denied Dec. 23, 1968.

M. Randall Vanet, Kansas City, Mo., for appellant and filed brief.

William A. Kitchen, Asst. U. S. Atty., Kansas City, Mo., for appellee; Calvin K. Hamilton, U. S. Atty., was on the brief with William A. Kitchen, Kansas City, Mo.

Before MATTHES, GIBSON and BRIGHT, Circuit Judges.

FLOYD R. GIBSON, Circuit Judge.

Eric L. Montgomery was convicted after trial by jury in the United States District Court for the Western District of Missouri for possession of stolen postal money orders of a value in excess

of $100 in violation of 18 U.S.C. § 641. He received a sentence of five years.

On appeal Montgomery questions the trial court's failure to sustain his motion to suppress evidence and the sufficiency of the evidence to sustain the verdict. In addition he asserts he was denied an impartial jury in violation of the Sixth Amendment since he could not take the witness stand, because the government would then be in a position to and intended to disclose his criminal record.

Before specifically considering the defendant's related contentions of lack of probable cause for his arrest, unreasonable search and seizure, and insufficiency of the evidence, a factual resume is necessary.

On June 27, 1967, Detective Rowe, an Independence, Missouri Police Officer, was informed by one, Dale M. Ressler, who worked at a Vickers filling station, in Independence, Missouri, that he had information regarding some stolen postal money orders. Ressler, a parolee, had five times previously supplied reliable information to Rowe. Later that morning Rowe notified the postal inspectors in the area, and he, together with Postal Inspectors Polnack and Gianos, met with Ressler at the filling station. Ressler told them he had been contacted the day before by an unknown man driving a Ford truck who had offered to sell him a number of stolen postal money orders. The money order shown to him bore the stamp of the Eagle, Nebraska Post Office, was filled out as to amount but not as to payee; and had been pulled from a Bible that bore the imprinted name Kelly G. Smith. Ressler also had obtained the license number of the truck operated by the person offering to sell the stolen postal money orders.

The driver of the truck offered to sell the money orders for $500, whereupon Ressler asked him to furnish the quantity in dollar amounts, which was done. Then Ressler asked the man to call him at 11:30 a. m. the next day.

The postal inspectors knew that the Eagle, Nebraska Post Office had been burglarized on March 29, 1967. They checked out the license number supplied to them by Ressler and found it to be registered to a Kelly G. Smith. A further check failed to reveal any criminal record on Smith. The postal inspectors also checked with Ressler's parole officer, who informed them that Ressler was unlikely to lie in a matter of this kind. Arrangements were made with Ressler to go through with the purchase of the stolen money orders.

Ressler received a call at 11:30 a. m. while he was in the process of discussing this matter with the postal inspectors. This call was monitored by Inspector Polnack with Ressler's consent. Ressler and the calling party agreed to meet at the filling station between 6:30 and 7:00 p. m. of that same day. Upon instruction of the postal inspectors, Ressler was to leave the filling station with the other party and to make the purchase at Ressler's home only if Ressler had first ascertained that the postal money orders were in the possession of the other party. The postal inspectors suspected that the proffered money orders were those stolen from the Eagle, Nebraska Post Office on March 29, 1967.

At about 6:55 p. m. a blue pickup truck pulled into the Vickers filling station. Two individuals left the vehicle and conversed with Ressler. After a check under the hood of the truck was made at the filling station, the hood was closed and the two individuals re-entered the pickup truck and followed Ressler, who had entered his own car and driven down the street. This maneuver was observed by Inspector Polnack who radioed Inspector Gianos and the Independence police that the men were enroute.

After traveling a few blocks and just before the truck reached Ressler's house the police car, in which Inspector Gianos rode, sounded its siren causing the truck to stop. Two occupants, later identified as Kelly G. Smith and defendant Eric L. Montgomery, were ordered out of the

truck or forcibly removed therefrom. A number of other police cars and officers quickly surrounded Smith and Montgomery. Independence Officer Terryberry informed them of their arrest and Inspectors Breda and Gianos searched the pickup truck and found a loaded .32 caliber pistol in the front seat and a cigar box containing 66 postal money orders from the Eagle, Nebraska Post Office, along with several validating stamps. The cigar box was on the floorboard under the front seat of the pickup truck on the passenger's side. The arrested men were searched and a tear gas pistol was removed from Montgomery's person. The inspectors also found a Bible with the name of Kelly G. Smith imprinted thereon in the glove compartment of the pickup truck.

Montgomery was placed in a police car with Officer Terryberry and Inspector Gianos, Officer Terryberry advised Montgomery of his constitutional rights and also that the charges against him were possession of a concealed weapon and possession of stolen property. Upon arrival at the Independence police station, Montgomery and Smith were booked on the charges as stated by Terryberry. The State charges were subsequently filed as enumerated but were dismissed upon the issuance of a federal complaint for the possession of stolen government property. This complaint in turn was dismissed after Smith and Montgomery were jointly indicted by a federal grand jury on July 26, 1967 for the present offense.

Both Smith and Montgomery filed a motion to suppress the evidence claiming a lack of probable cause for their arrest and also asserting that even if the arrest were valid the subsequent search was invalid under Missouri law and under the Fourth Amendment.

## MOTION TO SUPPRESS

■ Under Missouri law police officers may arrest without a warrant where there is a reasonable gound to believe a felony has been or is being committed. State v. Raines, 339 Mo. 884, 98 S.W.2d 580 (1936). If the arrest is legal under state standards and not violative of federal constitutional rights the arrest and the search incidental thereto is valid. And in the absence of an applicable federal statute the law of the state where an arrest without warrant takes place determines its validity. United States v. DiRe, 332 U.S. 581, 589, 68 S. Ct. 222, 92 L.Ed. 210 (1948); Ker v. California, 374 U.S. 23, 34, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

■ The facts known to the various officers participating in the investigation and arrest of Montgomery, together with the information supplied by Ressler, a previously reliable informer whose information checked out to be correct, would certainly cause a reasonable person to believe that the occupants of the truck had possession of stolen postal money orders and were attempting to dispose of this stolen property for their own benefit. The information that the suspects were enroute with the contraband was directly communicated by Inspector Polnack to Inspector Gianos by radio. Gianos was in the Independence, Missouri patrol car with Officer Terryberry when this information was received. The inspectors aided and cooperated with the Independence, Missouri police officials in making the arrest, but the information supplied was sufficient to constitute probable cause for the arrest of the defendant by either the postal inspectors or by the Independence police officers that stopped the truck in which defendant was riding. Feinstein v. United States, 390 F.2d 50 (8 Cir. 1968); Churder v. United States, 387 F.2d 825 (8 Cir. 1968).

■ Defendant complains that the officials had time to obtain a warrant. This complaint lacks substance as the investigating officials did not even know of Montgomery or that he would be with driver Smith at the time of the rendezvous for the sale. They also did not know that the party or parties in the pickup truck would have the stolen money orders with them at the time of the rendezvous with Ressler. It was only

upon Ressler's pre-arranged signal in leaving the filling station that the officials had probable cause to believe that the parties in the pickup truck had possession of the stolen money orders. The officers then were fully justified in apprehending the persons they thought to be in possession of the stolen postal money orders. The overall test for the arrest is whether the officers had probable cause to believe a felony was being or had been committed by the occupants of the truck. That probable cause existed to believe a felony had been or was being committed is evident under the facts of this case and requires no further discussion.

Defendant, however, contends that even if the arrest were valid the search incident to the arrest was not as the search was made by post office inspectors who, the defendant claims, have no right to initiate a search or seizure without a warrant. The Fifth Circuit case of Alexander v. United States, 390 F.2d 101 (1968) held that there was no federal law investing postal inspectors with the authority to arrest without a warrant but did recognize the right of postal inspectors to make a citizen's arrest if made in accordance with state law. As pointed out in *Alexander*, 39 U.S.C. § 903 authorizes a limited search for mailable matter transported in violation of law when a proper letter of authority is issued by the Postmaster General; and 39 U.S.C. § 3523(2) (K) in outlining the activity of postal inspectors, makes at least an oblique reference to their duties. It states:

> "(K) In any criminal investigation [postal inspector] develops evidence, locates witnesses and suspects; *apprehends and effects arrest of postal offenders*, presents facts to United States attorney, and collaborates as required with Federal and State prosecutors in presentation before United States commissioner, grand jury, and trial court." (Emphasis added).

*Alexander* found § 903 not pertinent to the factual situation under consideration and § 3523, relating generally to positions in salary levels of postal inspectors not to have the effect of clothing the inspectors with powers of arrest.

■ We need not pass on this issue at this time as Missouri has long recognized and adopted the doctrine of a citizen's arrest. The Missouri cases hold that a private citizen knowing that a felony has been or is being committed has a right to arrest the offender without a warrant. Richardson v. United States, 217 F.2d 696 (8 Cir. 1954); State v. Parker, 378 S.W.2d 274 (Mo.App.1964); State v. Parker, 335 Mo. 916, 199 S.W.2d 338, 340 (1947); State v. Peters, 242 S. W. 894 (Mo.1922); Hanser v. Bieber, 271 Mo. 326, 197 S.W. 68 (1917); Pandjiris v. Hartman, 196 Mo. 539, 94 S.W. 270 (1906).

■ And a search incident to a lawful citizen's arrest is valid. Ward v. United States, 316 F.2d 113, 118 (9 Cir. 1963) recognized that under California law postal inspectors may make a lawful citizen's arrest of a person suspected of committing or having committed a felony and approved a search of the defendant made incidental to the arrest. The same view was taken by the Tenth Circuit in Wion v. United States, 325 F.2d 420 (1963) in approving a citizen's arrest by postal inspectors under California law and a search of the apartment that was reasonably incident to the lawful citizen's arrest. See, Patrick v. State, 164 Tex.Cr.R. 584, 301 S.W.2d 138 (1957); Galbraith v. State, 184 So.2d 633 (Miss.1966).

■ We think the postal inspectors' search of the pickup truck incident to the lawful arrest of the occupants, including the defendant Montgomery, was reasonable under the facts of this case, there being probable cause to arrest without warrant and to make a search incident thereto to locate weapons, contraband, and fruits of the criminal offense under investigation.

■ Defendant next maintains that the arresting officers failed to comply with state law in not informing Montgomery of the charge against him

at the time of his arrest, and by not informing him of the officers' authority to act. The Missouri statute on arrest, § 544.180 V.A.M.S., states in part that "the officer must inform the defendant by what authority he acts." State v. Parker, 378 S.W.2d 274 (Mo.App.1964) in touching on this point said:

> " * * * [T]he [arresting] officer must give notice or make 'reasonable disclosure adapted to the circumstances' to the person sought to be arrested so as to reasonably convey to that person the knowledge that arrest is sought and intended; and, generally, he should also inform the person sought to be arrested of the object and cause of his arrest." (Citations omitted).

*Parker* dealt with the mixed-up situation of an individual making a citizen's arrest of a sheriff who was about to engage in an affray with a member of a group not in his capacity as sheriff but as a private citizen. That case is no authority for the defendant's contention that he should have been informed of the charges against him at the time of the arrest. The arrest in the case at bar was effected by police officers accompanied by postal inspectors and there could be no question or doubt as to their official status. It should have been apparent to the defendant who was in possession of stolen postal money orders, with a loaded pistol on the front seat in the truck and a tear gas gun on his person, that he would be arrested for carrying concealed weapons and possession of stolen government property; and he was so informed moments following his arrest. Generally, where time and circumstances permit, an officer serving a warrant of arrest should state his authority and inform the person arrested of the charge, but when an arrest is made during the commission of a crime the circumstances do not dictate nor should the law impose unreasonable formalities on the apprehension of those currently engaged in committing a felony. Theriault v. United States, 401 F.2d 79 (8 Cir. 1968).

In this case the officers' authority was apparent and Smith and defendant Montgomery must have had a good idea of what they were arrested for, since they were in the very act of carrying out a transaction of exchanging 66 stolen postal money orders for $500. A few minutes after their arrest, when they were taken to the Independence, Missouri police station, they were again informed of the charges. Where a party arrested knows that the party making the arrest is a police officer, there is no technical requirement of an announcement that the party effecting the arrest is a police officer. State v. Peters, 242 S.W. 894 (Mo.1922).

## SUFFICIENCY OF THE EVIDENCE

Defendant's only contention on the sufficiency of the evidence point is that the government failed to prove the value of the stolen money orders was in excess of $100 as alleged in the indictment. As an essential element of the charge, this burden was on the government; and was a necessary predicate to warrant the punishment assessed the defendant in this case. Stevens v. United States, 297 F.2d 664 (10 Cir. 1961). This the government did. The defendant and his former co-defendant Smith themselves had set a preliminary value of $500 on the money orders. This was the valuation on the criminal market, sometimes referred to as the "thieves market." Contraband and stolen items do have definite value on the "thieves market." These money orders had a face value of about $4200 and the defendant possessed all validating stamps but one easily forged dating stamp. From this evidence a reasonable inference could certainly be drawn that the value of the money orders was in excess of $100 in the criminal market.

## DENIAL OF IMPARTIAL JURY

Defendant's final contention is that he was denied an impartial jury and thus did not receive a fair trial as guaranteed by the Sixth Amendment because he was hindered from taking the witness stand

in his own behalf on account of his criminal record. He posits a novel contention that he should be allowed to take the witness stand without his criminal record being exposed for impeachment purposes so that he could relate his defense to the jury.

His attorney at a pretrial conference asked the court whether Montgomery's prior criminal record, including a post office larceny, could be used as impeachment if he decided to take the witness stand. The trial judge in line with the prevailing rules of evidence on impeachment of witnesses told counsel that Montgomery's record could be inquired into upon cross-examination. See numerous cases listed in 52 Mod.Fed. Pract.Dig., Witnesses, ☞345, 350. Montgomery did not take the stand in this case according to his brief as his criminal record included state convictions for burglary and jail breaking; and federal convictions for larceny from a post office and a Dyer Act violation. The defendant cites no cases in support of his contention. We know of none.

 It is axiomatic that when a defendant takes the stand in his own behalf he may be cross-examined with respect to prior felony convictions. Whitfield v. United States, 376 F.2d 5 (8 Cir. 1967) and cases and treatises cited at page 7. Under Rule 26, Fed.R.Crim.P., the competency and privileges of witnesses is governed, except when an act of Congress or the federal rules otherwise provide, by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. There appear to be no congressional acts or federal rules applicable to the situation under discussion. At common law a person with a criminal record was disqualified as a witness. Wigmore, Evidence 519 f.n. 1, 524 (3rd ed. 1940). This rule was not abolished in England until 1843 and in our common law jurisdictions until varying dates, mostly occurring in the 19th century. Missouri abolished the rule in 1879, Mo.R.S.1879, § 1378. The current Missouri statute in

abolishing the rule expressly provides that convictions may be proved to affect credibility. Mo.R.S.1959, § 491.050. This is typical of other statutes or decisional law on this point. While Rule 26 Fed.R.Crim.P., envisions the development of a uniform body of rules of evidence applicable to criminal trials in the federal courts, there is nothing in the federal cases that show a departure from the common law rules of evidence as universally changed and developed on this point. Reason and experience dictate the federal decisional law as now enunciated in many pertinent cases, including *Whitfield*, supra, is sound. Since impeachment is an integral part of cross-examination and is a fundamental right of the interrogator, it necessarily follows the defendant's claim that he was denied an impartial jury is without merit.

Judgment affirmed.