UNITED STATES of America,
Plaintiff,

v.

Ronald J. KRIZ, Defendant.

No. 3-69 CR. 20.

United States District Court
D. Minnesota,
Third Division.

July 25, 1969.

Patrick J. Foley, U. S. Atty., by J. Earl Cudd, Asst. U. S. Atty., for plaintiff.

Douglas W. Thomson, St. Paul, Minn., for defendant.

NEVILLE, District Judge.

This is a motion to suppress certain seized evidence and further to suppress a confession claimed to be the fruit of an illegal arrest. The facts are not in dispute.

On October 7, 1968, Albert Sable, a postal inspector, stationed at St. Paul, Minnesota, received information at or about noon from an informant that a shipment of gold had been stolen from the mail at St. Paul, Minnesota by defendant. Twice before this informant had furnished information which had proved reliable and on the basis of which stolen mail had been recovered.

The postal inspector called his counterpart at Seattle and was informed that a shipment of gold had been made from a bank in Alaska to a point in eastern United States routed through St. Paul, Minnesota. The shipment had been in two parts. One had been received by the consignee in Massachusetts, the other had not. The missing portion was identified by the Seattle postal inspector as in containers described as "pokes", i. e., leather bags in which gold is carried. Inspector Sable also talked to the addressee who confirmed that one shipment of gold was missing and had not been received.

Later the same day Mr. Sable was informed that a sale was to be effected of the stolen gold at or near the vicinity of White Bear and Minnehaha Avenues, an outlying neighborhood in St. Paul. He and another postal inspector kept the scene under surveillance from approximately 5:30 to 6:20 P.M. They saw the defendant and one Mathis who according to information received also was involved in the theft of the gold.[1] Nothing happened, however, and both of them left the scene after a brief time and went back to their work at the St. Paul Union Depot.

Sable ascertained that these two men regularly finished work about 9:30 P. M. He surmised that something had gone wrong with the 6:00 o'clock meeting and so returned again with another postal inspector to the scene of White Bear and Minnehaha Avenues circa 9:20 P. M. About 9:40 the defendant and Mathis arrived. Each drove up in his own automobile. They sat and waited until two men approached. The two men went with the defendant to the trunk of defendant's automobile, took out two objects and shortly put them both back into the trunk. Sable thereupon approached the defendant's car and told him and Mathis that they were under arrest. The other two men ran down an alley and he was unable to identify them. The trunk of the car was closed. Sable identified himself as a postal inspector, stated that he was arresting the defendant and Mathis and then with the other inspector handcuffed them. Thereafter Sable obtained the keys to the trunk from defendant and searched it, finding two pokes, one containing gold dust, the other gold nuggets. Both defendant and Mathis were searched for weapons but had none. At the scene of the arrest Sable told the defendant and Mathis that they were under investigation for mail theft but stated he did not wish to talk to them at that time, and asked them not to talk. He took them back to the St. Paul post office. He then read them a mimeographed form of *Miranda* warnings, gave the defendant and Mathis each one to read and asked them to read it and summarize orally to him its contents. The defendant then signed the mimeographed sheet containing the warnings and a waiver as did Sable. Shortly thereafter the defendant wrote out in his own longhand at the suggestion of Sable a statement. Sable witnessed him writing it and testified that he was in and out of the room from time to time as it was being written. This was completed around 11:00 o'clock. The statement is in essence a confession. Sable then called the United States Attorney and advised him of the facts. The United States Attorney suggested defendant be released and brought to his office the following day. This was done. Forthwith a United States Commissioner's hearing was held.

Defendant claims that his arrest was unlawful because at the time of the arrest the postal inspectors had no arresting authority. The government contends that defendant's arrest was a valid citizen's arrest. This defendant disputes.

In Alexander v. United States, 390 F. 2d 101 (5th Cir. 1968), the Fifth Circuit held that postal inspectors have no federal statutory authority to make arrests. The government does not dispute the soundness of this decision and the court is of the view that the holding in *Alexander* must be followed. Here de-

---

1. Mathis has pled guilty to the offense charged and has been sentenced.

fendant was arrested on October 7, 1968. Five days later, on October 12, 1968, Congress enacted 18 U.S.C. § 3061 granting postal inspectors the authority to arrest with or without a warrant. Since this statute was not enacted until after defendant's arrest however, both sides concede that it is not applicable in this case.

■ Absent a federal statute, the validity of the arrest of defendant is to be resolved by state law subject to federal constitutional safeguards. Miller v. United States, 357 U.S. 301, 305, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958); United States v. Di Re, 332 U.S. 581, 589, 68 S.Ct. 222, 92 L.Ed. 210 (1948); Montgomery v. United States, 403 F.2d 605, 608 (8th Cir. 1968); and Theriault v. United States, 401 F.2d 79, 81 (8th Cir. 1968), cert. denied, 393 U.S. 1100, 89 S.Ct. 898, 21 L.Ed.2d 792 (1969). Minn. Stat. § 629.37(3) authorizes an arrest without warrant by a private person "when a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it." Minn.Stat. § 629.38 states that "before making an arrest such private person shall inform the person to be arrested of the cause thereof and require him to submit, except when he is in the actual commission of the offense * * *." Finally Minn. Stat. § 629.39 requires that "every private person who shall have arrested another for the commission of a public offense shall, without unnecessary delay, take him before a magistrate or deliver him to a peace officer."

■ Where probable cause exists, postal inspectors may make a lawful citizen's arrest and conduct a search incident thereto. Montgomery v. United States, 403 F.2d 605, 609 (8th Cir. 1968); Wion v. United States, 325 F.2d 420 (10th Cir. 1963); Ward v. United States, 316 F.2d 113 (9th Cir. 1963). In the case at bar the court is satisfied that postal inspector Sable made a valid citizen's arrest. The evidence is overwhelming that he had probable cause to believe that defendant had committed a felony. He had received information from a reliable informant that defendant had stolen a shipment of gold and was going to dispose of it. He had checked with a postal inspector in Seattle to find that a shipment of gold from the Bank of Alaska was in fact missing. The addressee of the shipment further confirmed the fact that the shipment had not arrived on schedule. This same informant told Sable that a sale was going to be made near the vicinity of White Bear and Minnehaha Avenues and defendant appeared on the scene at the appointed time and place. Later when defendant returned to this locale and after observing the activity of Mathis and two other men, inspector Sable made his arrest. Certainly this arrest was made upon probable cause and the search of the trunk was permissible as being incident thereto. Sable had seen defendant go to the trunk of his car and take out two objects and then replace them. This was a search reasonably calculated to discover the stolen gold involved in the offense under investigation, was contemporaneous with the time of arrest, and was confined to the immediate vicinity.

■ The court also is satisfied that inspector Sable complied with the Minnesota Statutes governing a citizen's arrest. At the time of the arrest, inspector Sable identified himself, told defendant that he was being placed under arrest and told defendant that he was being charged with mail theft. The court holds that such a procedure fully complies with Minn.Stat. § 629.38 requiring that a citizen "inform the person to be arrested of the cause thereof." The Eighth Circuit has noted that the "evident purpose of giving notice of the authority and cause for arrest is to establish a procedure that is likely to result in a peaceable arrest." Klingler v. United States, 409 F.2d 299 (8th Cir. 1969). Here defendant knew he was being arrested by postal inspectors on a charge of mail theft. There was no confusion or deception and the arrest was peace-

ful. Such a procedure was approved in Montgomery v. United States, *supra,* 403 F.2d at 609–610. Finally the court holds there was no "unnecessary delay" to make the arrest violative of Minn.Stat. § 629.39. Defendant was not asked any questions at the scene. Instead, at approximately 10:15 P.M. he was taken back to the St. Paul post office and given the various *Miranda* warnings. Thereafter, defendant indicated that he would be willing to make a statement and he did. Such a statement was voluntary and completed about 11:00 P.M. The United States Attorney was thereafter called and on his suggestion defendant was released. He appeared voluntarily in the United States Attorney's office the next morning and promptly thereafter was brought before a United States Commissioner. The court does not find any unreasonable delay in a procedure of this sort.[2] This is certainly a different set of facts than found in Alexander v. United States, 390 F.2d 101 (5th Cir. 1968) relied on by defendant where the court found that the postal inspectors had tricked and misled defendant into producing certain marked bills and in giving a confession. Moreover in *Alexander,* the Texas statute under which the postal inspectors purported to act required that a citizen's arrest must be followed by an *immediate* removal to a magistrate or peace officer. Thus the Texas and Minnesota statutes differ in that Minn.Stat. § 629.39 states that there should be no *unnecessary delay.* The court is of the opinion that the requirement of no unnecessary delay was fully satisfied, defendant's constitution-

al rights safeguarded and that the arrest was legal.[3] Thus neither the seized "pokes" nor defendant's statement will be suppressed.

---

2. The court also takes note of 18 U.S.C. § 3501(c) requiring a voluntary confession made within six hours after arrest not to be "inadmissible solely because of delay in bringing such person before a magistrate * * *." In this case the evidence shows that defendant's confession was completely voluntary and that it was made after defendant was fully advised of his rights.

3. Defendant at the hearing orally requested and moved for production and inspection of postal inspector Sable's report to the United States Attorney for the purpose of cross-examination at the pretrial hearing of defendant's motion to suppress. The court is informed by the United States Attorney that a portion of the report marked Exhibit B to the government's brief was sent to counsel for defendant. The report itself substantiates inspector Sable's oral testimony at the pretrial hearing and in view of the action by the United States Attorney, this request is moot.