**Gilbert Lewis WHITFIELD, Appellant,**

**v.**

**UNITED STATES of America,**
**Appellee.**

**No. 18517.**

United States Court of Appeals
Eighth Circuit.

April 10, 1967.

Robert B. Curtis, St. Louis, Mo., for appellant.

Irvin L. Ruzicka, Asst. U. S. Atty., St. Louis, Mo., for appellee. Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., was with him on the brief.

Before MATTHES, LAY and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

Appellant, Gilbert Lewis Whitfield, was indicted by a grand jury on the following counts: (1) willfully and knowingly passing, with intent to defraud, seven counterfeited $10.00 Federal Re-serve Notes, to Pearl Gentry, on May 30, 1966, contrary to 18 U.S.C. § 472,[1] (2) transferring and delivering three coun-terfeited $10.00 Federal Reserve Notes to Pearl Gentry, on May 31, 1966, con-trary to 18 U.S.C. § 473,[2] and (3) will-fully and knowingly keeping in his pos-session fifteen falsely made and counter-feited Federal Reserve Notes contrary to 18 U.S.C. § 472. He pled not guilty, was tried before a jury, and found guilty on each count. The trial court sentenced him to serve ten years on each count, the sentences to run concurrently.

The testimony at trial indicated that the appellant, pursuant to earlier ar-rangements, went to the hotel room of Pearl Gentry, a St. Louis nightclub exotic dancer, about 1:30 a. m., May 30, 1966, and that before departing, he left the seven counterfeit notes, described in Count One of the indictment, on a table near her bed.[3]

At noon on May 30th, Mrs. Gentry went to a Western Union office where she at-tempted to purchase money orders with the counterfeit notes. A Western Union employee observed that the notes were counterfeit and called the police. Mrs. Gentry was taken to police headquarters where she admitted obtaining the notes from the appellant and agreed to coop-erate with the Treasury Department in apprehending him.

The following day, she talked with the appellant by phone at his hotel on two dif-ferent occasions. During her first call, she explained that she had been caught with the counterfeit money and, as a re-sult, had lost her job. She asked him to

1. 18 U.S.C. § 472 reads:
"Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both."

2. 18 U.S.C. § 473 reads:
"Whoever buys, sells, exchanges, trans-fers, receives, or delivers any false, forged, counterfeited, or altered obliga-tion or other security of the United Stat-es, with the intent that the same be passed, published, or used as true and genuine, shall be fined not more than $5,000 or imprisoned not more than ten years, or both."

3. The testimony is in dispute as to what occurred in the room and why the appel-lant gave Pearl Gentry the counterfeit notes.

come to her room, and the appellant said he would.

However, the appellant did not go to her room, and after a considerable wait, she again called him at his hotel. This time, they arranged to meet at a restaurant located across the street from Mrs. Gentry's hotel. About six o'clock that evening, she proceeded to the restaurant where, after a five-minute wait, she was joined by the appellant. They conversed for about twenty minutes, with Mrs. Gentry stating that she needed money to travel to her hometown in order to fill a dancing contract. The appellant offered to give her two "good" ten dollar bills, explaining that this was all the "good" money he had in his possession. She persisted that she needed additional funds, and said she was willing to accept counterfeit money. After some hesitation, the appellant agreed to give her more money upon her promise that he could accompany her to her hotel room. He left the restaurant and returned twenty minutes later. They left the restaurant together and, as they were walking toward her hotel room, the appellant handed Mrs. Gentry two legitimate bills and the three counterfeit notes described in Count Two of the indictment. She immediately signaled the waiting Treasury Agents who apprehended the appellant.

Subsequently, the agents obtained written permission to search the appellant's apartment—the search resulting in the agents finding the counterfeit money described in Count Three of the indictment.

The appellant does not question the sufficiency of the evidence to support the verdict; however, he urges reversal on the grounds that the trial court erred: (1) by permitting the appellee to cross-examine him with respect to prior felony convictions, (2) by not ruling as a matter of law that he was entrapped, and (3) by receiving in evidence the counterfeit notes obtained in the search of the appellant's apartment—a search which the appellant contended violated his constitutional rights.

Since the sentence imposed on Whitfield was less than the maximum punishment authorized by the statute for conviction under any of the three counts, the judgment below must be upheld if the conviction upon any of the counts is sustainable. Barenblatt v. United States, 360 U.S. 109, 79 S.Ct. 1081, 3 L.Ed.2d 1115 (1959); Haggard v. United States, 369 F.2d 968 (8th Cir. 1966); Atkinson v. United States, 344 F.2d 97 (8th Cir. 1965).

The appellant raises only one contention that effects the validity of the conviction on all three counts, namely, that the trial court erred in permitting him to be cross-examined with respect to five prior felony convictions. This contention is not well taken. A defendant who takes the stand in his own behalf may be cross-examined with respect to prior felony convictions. Michelson v. United States, 335 U.S. 469, 482, 69 S. Ct. 213, 93 L.Ed. 168 (1948); United States v. Yarbrough, 352 F.2d 491, 493 (6th Cir. 1965); United States v. Pennix, 313 F.2d 524, 529 (4th Cir. 1963); Scaffidi v. United States, 37 F.2d 203, 211 (1st Cir. 1930); Williams v. United States, 3 F.2d 129 (8th Cir. 1924); Wheeler v. United States, 293 F. 588 (5th Cir. 1923); see Rizzo v. United States, 304 F.2d 810 (8th Cir. 1962); 1 WIGMORE, EVIDENCE § 196 (3d ed. 1940); 3 WIGMORE, EVIDENCE § 981–987 (3d ed. 1940).

The appellant's sole remaining defense to Count One was that he did not realize that the seven notes he gave to Pearl Gentry were counterfeit. This defense was considered by the jury and rejected. The notes were given to Pearl Gentry by the appellant before either the alleged entrapment or the illegal search took place. The evidence as to the illegal passing of these notes by the appellant was clear, convincing and undisputed.

There is not a reasonable possibility that the evidence obtained by the subsequent alleged entrapment or alleged illegal search could have contributed to the appellant's conviction on the first count. See Chapman v. State of California, 386

U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (U. S. Feb. 20, 1967); Fahy v. State of Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963). The conviction on Count One of the indictment is affirmed.

For the reasons previously stated, we will not consider the merits of appellant's arguments on Counts Two and Three.

Affirmed.