UNITED STATES of America,
Plaintiff-Appellee,

v.

Kenneth Monroe JONES, Defendant-Appellant.

No. 16711.

United States Court of Appeals
Seventh Circuit.

Nov. 18, 1968.

Certiorari Denied April 1, 1969.
See 89 S.Ct. 1280.

Stanley A. Bass, Chicago, Ill., for appellant.

Thomas A. Foran, U. S. Atty., Thomas N. Todd, Asst. U. S. Atty., Chicago, Ill., for appellee, John Peter Lulinski, Michael B. Nash, Asst. U. S. Attys., of counsel.

Before KNOCH, Senior Circuit Judge, and KILEY and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

This appeal is from a judgment of conviction of the robbery of a federally insured bank in violation of Section 2113 (a) of the Criminal Code (18 U.S.C. § 2113(a)). On June 19, 1964, the Bank of Lyons, Illinois, was robbed of $3,045. A vice president of the bank followed the getaway car but did not catch up with it. It was driven by an accomplice, with the robber riding on the passenger side of the front seat. The car had been obtained from a used car lot earlier the same day, through the customer's ruse of taking it for a test drive. It was found that afternoon several blocks from the bank.

In April 1965, defendant was arrested by Illinois officials for the alleged robbery of a service station in Rock Island, Illinois. He was committed to the Rock Island County jail because he could not post bond. On May 3, 1965, he and three other prisoners were placed in a lineup in the jail. Colored movies were taken of the lineup by the Federal Bureau of Investigation while the four prisoners "were directed to go through different procedures, wearing a hat, turning around, etc." A month after his Rock Island arrest, defendant was turned over to the federal authorities for trial on charges of robbing a bank in St. Louis, Missouri. Meanwhile, the lineup motion pictures and photographs of defendant were exhibited to the Lyons bank teller and to the salesman who had supplied the getaway car. The teller was unable to identify defendant positively as the bank robber until she viewed him on October 4, 1965, during his St. Louis trial. The salesman was never completely certain in his identification.

On October 22, 1965, defendant commenced serving a 10-year sentence for the St. Louis robbery. On the same day a complaint was filed with the United States Commissioner in Chicago asserting that defendant robbed the bank at Lyons, and an arrest warrant thereupon issued. The defendant was brought before the Commissioner on September 27, 1966, an attorney was appointed, a preliminary hearing was waived, and defendant was ordered held to the United States District Court.

On March 21, 1967, defendant was indicted for robbery of the bank at Lyons. He was arraigned and entered a not guilty plea on April 19, 1967, new counsel then being appointed. Thereafter he was returned to the Federal Penitentiary in Terre Haute, Indiana where he continued to serve his St. Louis sentence. He was returned to Chicago for the Lyons bank robbery trial commencing November 2, 1967. At the trial, the Lyons teller positively identified defendant as the robber, while the used car salesman testified that defendant resembled the man who borrowed the getaway car. Clarence McCormick, a fellow inmate at the Terre Haute penitentiary, testified that defendant admitted the Lyons bank robbery to him in June or July of 1967.

Defendant took the stand and denied that he committed the Bank of Lyons robbery. He also denied that he had admitted the crime to McCormick. He was unable to remember where he was on the date of the bank robbery but did testify as to his presence in Mississippi, Florida and Tennessee during parts of May and June of 1964. He said that he was in Rock Island for a few days in June 1964, commencing about June 23, before traveling to Nashville, Tennessee.

Defendant was found guilty after a jury trial and received a 13-year sentence, to run concurrently with the 10-year St. Louis bank robbery sentence. In view of his serving that sentence, this

case of course presents no question of denial of pre-trial liberty.

Relying on the Fifth and Sixth Amendments and Rule 48(b) of the Federal Rules of Criminal Procedure, defendant attacks the delays in indicting and trying him. Although the bank robbery took place on June 19, 1964, it was not until October 4, 1965, that defendant was absolutely identified as the robber by the bank teller. Three weeks thereafter the Government filed its complaint before the United States Commissioner and obtained a warrant for his arrest. By that time, he was in the Federal Penitentiary in Terre Haute, Indiana, having just received a 10-year sentence for the robbery of a St. Louis bank. Eleven months later, he was brought before the United States Commissioner, and experienced trial counsel was simultaneously appointed to represent him.

■ No complaint was made about the delay in bringing defendant before the Commissioner, nor was any complaint made when an indictment was not returned until six months thereafter.[1] Strictly speaking, the failure of the defendant's former and present counsel to have demanded trial waived the right to question the delays. United States v. Perez, 398 F.2d 658, 661 (7th Cir. 1968); United States v. Maxwell, 383 F.2d 437, 441 (2d Cir. 1967), certiorari denied, 389 U.S. 1057, 88 S.Ct. 809, 19 L.Ed.2d 856.

■ Here there was a delay of eighteen months in indicting defendant after he was definitely identified. Recently, in United States v. Hauff, 395 F.2d 555, 556 (7th Cir. 1968), we refused to dismiss an indictment even though there was a "delay of more than two years from the discovery of the alleged facts of the offense to the time the indictment was handed down," for the defendant had not shown any prejudice. Similarly, the

present defendant's motion to dismiss the indictment does not point to any prejudice flowing from the delays. A review of his testimony discloses his denial of being in Lyons, Illinois in June 1964. He remembered that he was in Rock Island for three or four days commencing June 23, 1964. His testimony enabled his counsel to claim in closing argument that defendant was in Mississippi or Tennessee at the time of the robbery. Therefore, it cannot be legitimately said that the time lags foreclosed an alibi defense. Defendant has simply not sustained his burden of proving that he was prejudiced by the delay in indicting and trying him.

We do not condone the delays in this prosecution and would not hesitate to rule for defendant if he had shown prejudice. Also, it would have been far better practice for the Assistant United States Attorney to explain to the trial court why these delays had occurred, instead of merely advising us at oral argument that the Government was hoping to apprehend defendant's accomplice before indicting and trying this defendant. Cf. United States v. Feinberg, 383 F.2d 60, 64–65 (2d Cir. 1967), certiorari denied, 389 U.S. 1044, 88 S.Ct. 788, 19 L.Ed.2d 836.

■ When the colored movies were taken of the lineup in the Rock Island jail, defendant was being detained for inability to post bond, and if he were out on bail he would not have been subjected to this lineup. Defendant recognizes that the necessity of assuring the presence of accused persons at trial justifies pre-trial detention in default of bail. He also agrees with the district court that the present lineup was conducted fairly. Nevertheless, he argues that the lineup, occasioned by his inability to post bond, must founder on the equal protection clause. An identical argument was rejected in Rigney v. Hen-

---

1. On these facts we need not distinguish between pre-arrest delay as a violation of the Fifth Amendment and post-arrest delay as a violation of the Sixth Amendment right to speedy trial. Cases arising under both amendments have required a showing of prejudice which we find absent here. See United States v. Deloney, 389 F.2d 324 (7th Cir. 1968); United States v. Napue, 401 F.2d 107 (7th Cir. 1968).

drick, 355 F.2d 710, 715 (3d Cir. 1965), certiorari denied, 384 U.S. 975, 86 S.Ct. 1868, 16 L.Ed.2d 685,[2] where the court stated:

"Here we cannot find an invidious discrimination for the different methods employed by the police in securing the identification of a suspected criminal are made necessary because of the difference in circumstances in which those free on bail and those detained find themselves. Admittedly, there is a classification between those who can and those who cannot make bail. The Constitution, however, permits such a classification, and any differences here, arise solely because of the inherent characteristics of confinement and cannot constitute invidious discrimination."

We agree with these views, as did the Ninth Circuit in Gilbert v. United States, 366 F.2d 923, 946 (9th Cir. 1966), certiorari denied, 388 U.S. 922, 87 S.Ct. 2123, 18 L.Ed.2d 1370. Here all arrestees could have been photographed in lineups prior to release on bail (so long as counsel was present[3]), so that the inability to post bail was not a precondition of the lineup. The fortuitous circumstance that this movie film was made after defendant failed to post bond should not cause the equal protection clause to come into play. Accordingly, there was no necessity for the trial judge to exclude the testimony of the bank teller and the used car salesman who had viewed the film.

Defendant's final contention is that the district court should have granted his motion to produce the Terre Haute, Indiana, penitentiary records involving Clarence McCormick, the prison inmate to whom the defendant allegedly con-

fessed. This motion was made after the Government rested its case. Its purpose was to discover possible impeachment material. The Assistant United States Attorney advised the district court that he knew of no prison records that might impeach McCormick.[4] In response to this request, the district court pointed out that impeachment material had been presented by McCormick's own testimony that he had twice been convicted of felonies and that he was presently incarcerated in the Terre Haute penitentiary. Defense counsel also had succeeded in bringing out that McCormick had previously been a stool-pigeon in testifying against another inmate in a murder case.

In his closing argument, defense counsel cast considerable doubt on McCormick's credibility:

"[W]hen that squealer got on the stand there, the one from Terre Haute, and said, 'Oh, I don't expect any consideration at all,' who can believe that? Is that reasonable? Nobody can believe that; nobody can believe that he doesn't expect some consideration for testifying.

\* \* \* \* \* \*

"There is no corroboration at all of McCormick's story. If the Government had corroboration, don't you think they would have brought in other witnesses.

"If Jones is going around telling everybody, 'I did it, I'm guilty, I robbed the bank,' why doesn't the Government bring in lots of people to say that. No, you are going to believe McCormick who gets on there and says, 'Yes, that's exactly what he told me, and I don't expect any consideration at all for that'? That's ridiculous, and that is unrea-

**2.** We cited the *Rigney* opinion with approval in United States v. D'Argento, 373 F.2d 307, 311 (7th Cir. 1967), certiorari denied sub nom. Tomaszck v. United States, 389 U.S. 833, 88 S.Ct. 31, 19 L. Ed.2d 93.

**3.** United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18

L.Ed.2d 1178. Being prospective only, the rule of these cases is inapplicable here.

**4.** The Government did not seek to suppress any evidence favorable to the accused, so that the rule of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215, does not apply.

sonable to expect that that story is true. You cannot believe that story."

■ Since the cross-examination of McCormick was not unduly hindered by the absence of prison records and since defense counsel was able to attack his testimony vigorously in closing argument, the trial judge was justified in not delaying the trial in order to obtain McCormick's prison records from Indiana on the mere hope that they might contain something which would further discredit the witness. There being no prejudice to defendant, there is no need to decide whether prison records are appropriate instruments for impeachment of a prisoner-witness's testimony.

The Court wishes to express its appreciation to Stanley A. Bass, Esq., of the Chicago Bar for his able representation of defendant as appointed counsel.

The judgment is affirmed.