**UNITED STATES of America, Appellee,**

v.

**Michael SCARPELLINO, Appellant.**

**No. 19823.**

United States Court of Appeals, Eighth Circuit.

Sept. 10, 1970.

---

Bright, Circuit Judge, concurred and filed opinion.

See also, D.C., 296 F.Supp. 269.

King Tristani, Minneapolis, Minn., for appellant.

J. E. Cudd, Asst. U. S. Atty., Minneapolis, Minn., for appellee; Robert G. Renner, U. S. Atty., on the brief.

Before VOGEL, Senior Circuit Judge, and GIBSON and BRIGHT, Circuit Judges.

GIBSON, Circuit Judge.

Defendant Michael Scarpellino was indicted for taking $9,527 belonging to Midwest Federal Savings & Loan Association (a federally insured institution) on July 6, 1967, in Minneapolis, Minnesota, and for assaulting and placing in jeopardy the lives of three employees of that association by the use of a hand gun in the commission of the robbery in violation of 18 U.S.C. § 2113(a) and (d). Defendant was found guilty

by a jury and was sentenced, upon a judgment of conviction being duly entered, to 20 years imprisonment.

On appeal defendant contends the trial court erred in admitting fingerprint evidence when defendant had not been placed in the vicinity of the alleged getaway car from which the prints were taken, citing Hiet v. United States, 124 U.S.App.D.C. 313, 365 F.2d 504 (1966) and Borum v. United States, 127 U.S. App.D.C. 48, 380 F.2d 595 (1967). Without this fingerprint evidence, defendant alleges there is not sufficient evidence to sustain the conviction.

The record shows that a branch of the Midwest Federal Savings & Loan Association located in the Apache Plaza Shopping Center was robbed shortly after 9 a. m. on July 6, 1967, by two armed men. Defendant was identified by Barbara Korman, an employee of Midwest Federal, as the armed man who remained in the lobby. Korman described the robber as 5'7", 145 to 150 pounds, 35 to 40 years of age, Caucasian, with dark skin and black hair (with a graying effect), perhaps of Syrian, Italian or Greek nationality, and wearing white gloves and sunglasses. While Korman was the only witness who identified defendant as the armed man who remained in the lobby area during the July 6, 1967 robbery, four other employees of Midwest Federal testified defendant resembled the robber.

Korman had ample opportunity to observe the robber identified by her as the defendant,[1] and the weight of the evidence is for the jury's determination. "In a criminal case where there has been a conviction resulting from a jury verdict of guilty, the appellate court must take that view of the evidence that is most favorable to supporting the jury verdict and must accept as established all reasonable inferences that tend to support the action of the jury. Any con-

flicts in the evidence are resolved in favor of the jury verdict." McClard v. United States, 386 F.2d 495, 497 (8th Cir. 1967), cert. denied, Ussery v. United States, 393 U.S. 866, 89 S.Ct. 149, 21 L.Ed.2d 134 (1968). The fact that the other witnesses were unable to make positive identifications of defendant does not "present any question of infirmity or discredit in the identification testimony arguable as a matter of law." United States v. Stewart, 429 F.2d 15 (8th Cir. 1970). Their inability to make positive identifications presents nothing more than a matter for factual argument to the jury. Therefore, we think the identification evidence set forth above is sufficient to sustain defendant's conviction.

Furthermore, we think there is no doubt that the fingerprint evidence was properly admitted. The record establishes that at approximately 9:10 a. m. on July 6, 1967, two men were seen proceeding from Midwest Federal in a northwesterly direction toward the parking lot. One was carrying a white sack (a white sack was used in the robbery) and the other had a gun in his hand. Truck driver Millard Rollins testified that sometime between 8:30 and 9 a. m. he saw a 1963 or 1964 light blue Buick Riviera leave the Apache Plaza parking lot and speed at 40 to 50 m.p.h. toward 37th Avenue. Rollins was standing on the driver's side of the car and was within five or six feet of the car as it passed by. He testified there were two men in the car and that the driver was dark complected, 30 to 40 years old, and wearing white gloves and sunglasses. Between 9:00 and 9:30 a. m., a two-door Buick Riviera, described as dark blue or black, made a rolling stop at a stop sign at 37th Avenue and Johnson Street, Minneapolis, approximately one mile west of the Apache Plaza Shopping Center. The Riviera, containing two men, proceeded south on Johnson Street. At

---

1. The testimony shows that the witness who made positive identification of defendant, Barbara Korman, had the opportunity to observe the robber's face, which was not masked, from a distance of approximately 12 feet for five or six minutes.

approximately 9:15 a. m., a silver blue 1963 or 1964 Buick Riviera was parked facing south on Johnson Street near 33d Avenue. A dark complected man with silvery hair appeared to be walking from the Riviera and proceeded toward another car parked down the block which he got into. Upon being notified of the location of the Riviera, the police arrived at 33d and Johnson between 11:00 and 11:30 a. m. Approximately one hour later the Riviera, which had been stolen from a used car lot, was towed to the police garage. The next day Francis R. Grady, a special agent with the FBI, lifted approximately 25 sets of latent fingerprints from the Riviera. Grady testified that one of the fingerprints lifted from the Riviera was made by the left index finger of defendant.

■ Fingerprint evidence is of course admissible for the purpose of identifying the accused and of connecting him to the offense. The above sequence of events establishes that the stolen Riviera was used by the robbers in the Midwest Federal robbery. The fact that many people may have had access to the stolen car while it was on the used car lot and that the Government did not prove the car was generally inaccessible to defendant unless he had possession of it did not render inadmissible fingerprints taken from the car. The evidence had probative value and whether it supported the inference that defendant was in the car at the time it was used to flee the scene of the robbery was for the jury to determine.

*Hiet* and *Borum,* cited by defendant, are both split decisions. *Hiet* dealt principally with the sufficiency of the evidence and is of no significance in considering the factual context of the case at bar. *Borum,* in a separate opinion by Chief Judge Bazelon,[2] stated that fingerprint evidence alone was insufficient to sustain a conviction in the ab-

sence of evidence that the objects from which the prints were taken were generally inaccessible to the defendant prior to the crime. Judge Bazelon's statements appear limited to the amount of weight to be accorded fingerprint evidence in the absence of any other evidence and do not constitute a principle of law recognized in this Circuit or any other circuit that we can find. The identification of defendant by employee Korman, together with the identification of defendant's fingerprints on the getaway car, is more than sufficient to support the jury verdict.

After testifying in his own behalf, defendant was cross-examined with respect to prior convictions. He admitted a conviction for possession of narcotics. On redirect examination defendant explained the circumstances surrounding this conviction and apparently admitted a conviction on a gun charge.

■ Defendant argues the trial court has the discretion to permit a defendant to testify free of impeachment by prior conviction, citing Luck v. United States, 121 U.S.App.D.C. 151, 348 F.2d 763 (1965); Weaver v. United States, 133 U.S.App.D.C. 66, 408 F.2d 1269, cert. denied, 395 U.S. 927, 89 S.Ct. 1785, 23 L.Ed.2d 245 (1969), and a number of other like decisions from the District of Columbia Circuit. Defendant maintains the trial court should not have permitted the Government to utilize his narcotics conviction to impeach him since the conviction occurred when defendant was 18, seven years prior to trial, and because a conviction for possession of narcotics does not rest on dishonest conduct or in any way reflect adversely on defendant's credibility.

The District of Columbia decisions on this point concern a provision of the District of Columbia Code relating to witnesses and impeachment by prior criminal conviction.[3] These District of Co-

---

2. All judges of the panel wrote separate opinions, with Judge Burger, now Chief Justice, authoring a strong and persuasive dissent.

3. 14 D.C.Code § 305 (1961) states that a prior conviction "may be given in evidence to affect * * * credibility * * *." This provision is construed as

lumbia cases afford no precedential value on this issue for this Circuit. As the Government correctly points out, this Court has consistently held that prior convictions are admissible for impeachment purposes. Tarvestad v. United States, 418 F.2d 1043, 1048 (8th Cir. 1969), cert. denied, 397 U.S. 935, 90 S.Ct. 944, 25 L.Ed.2d 116 (1970); Montgomery v. United States, 403 F.2d 605, 611 (8th Cir. 1968), cert. denied, 396 U.S. 859, 90 S.Ct. 126, 24 L.Ed.2d 110 (1969); Whitfield v. United States, 376 F.2d 5, 7 (8th Cir.), cert. denied, 389 U.S. 883, 88 S.Ct. 143, 19 L.Ed.2d 179 (1967); Edwards v. United States, 333 F.2d 588, 591 (8th Cir. 1964). "A defendant who takes the stand in his own behalf may be cross-examined with respect to prior felony convictions." Whitfield v. United States, 376 F.2d at 7. *See also* Proposed Rules of Evidence for the United States District Courts and Magistrates rule 6–09 (Prelim. Draft 1969).

Defendant also contends it was error to compel him to appear in a pretrial lineup, for the only reason he could be forced to appear in a lineup was that he was incarcerated pending his trial (because he was unable to post bail). He views this action as violative of due process and equal protection of law. In support of his position he asserts that the district court cannot require one who is free on bail to reappear for lineup purposes by making such reappearance a condition of granting bail, because such a condition would be in violation of 18 U.S.C. § 3146 and cases which point out that conditions of release in non-capital cases "must be for the sole purpose of reasonably assuring the presence of the defendant at trial," citing Brown v. United States, 392 F.2d 189, 190 (5th Cir. 1968) and Brown v. Fogel, 387 F.2d 692 (4th Cir. 1967), cert. denied, 390 U.S. 1045, 88 S.Ct. 1647, 20 L.Ed.2d 307 (1968).

We note at the outset that defendant's attorney was present at the lineup and defendant raises no question as to the fairness of the proceeding. While Judge Phillip Neville's memorandum opinion reported at 296 F.Supp. 269 very ably answers defendant's contentions, we think there are two principal reasons for rejecting defendant's argument. First, provisions for release on bail under the Bail Reform Act are not related principally to the financial condition of the accused. 18 U.S.C. § 3146. Second, as subsequently discussed, an accused, released on bail is not insulated from the identification process.

 In United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the Supreme Court held that compelling a defendant to exhibit his person in a lineup did not violate his privilege against self-incrimination. As the District Court's memorandum opinion points out, 18 U.S.C. § 3146 authorizes the trial court to release the defendant on bail prior to trial and to impose conditions on this release to "reasonably assure the appearance of the person *as required.*" (Emphasis added.) Consequently, defendant is in error when he contends that the only conditions the court can impose upon a bailed defendant are conditions which will reasonably assure the presence of the defendant at trial. Defendants who are released on bail in the District of Minnesota, where this defendant was held, are expressly required to execute a document by which they agree to appear for trial and at any other place in accordance with an order of the court. Furthermore, we think, as did the District Court, that even without the personal covenant to appear as directed by the court, a defendant on bail could be ordered by the court to appear at a properly requested and conducted lineup. Since defendants who are free on bail can be compelled to submit to

---

vesting the trial court with a sound judicial discretion in limiting impeachment by prior convictions. *See* Luck v.

United States, 121 U.S.App.D.C. 151, 348 F.2d 763, 768 (1965).

lineups, defendant was not denied due process of law or deprived of equal protection of law by being required to participate in a lineup while he was incarcerated because he was unable to post bail. United States v. Jones, 403 F.2d 498, 500–501 (7th Cir. 1968), cert. denied, 394 U.S. 947, 89 S.Ct. 1280, 22 L.Ed.2d 480 (1969); Gilbert v. United States, 366 F.2d 923, 946 (9th Cir. 1966), cert. denied, 388 U.S. 922, 87 S.Ct. 2123, 18 L.Ed.2d 1370 (1967), 393 U.S. 985, 89 S.Ct. 460, 21 L.Ed.2d 446 (1968); Rigney v. Hendrick, 355 F.2d 710 (3d Cir. 1965), cert. denied, 384 U.S. 975, 86 S.Ct. 1868, 16 L.Ed.2d 685 (1966).

Judgment affirmed.

BRIGHT, Circuit Judge (concurring).

I concur in the result reached by the majority, but add a comment concerning the doctrine emanating from Luck v. United States, 121 U.S.App.D.C. 151, 348 F.2d 763 (1965), and its progeny.[1] I find it unnecessary to consider the Luck doctrine in resolving this case. Here, the defendant testified on his own behalf. When the prosecution questioned him with respect to his prior convictions, he then objected to this line of questioning. An objection made initially during cross-examination calls for no application of Luck. To invoke the Luck doctrine, the defendant, prior to testifying, must request that the court exclude evidence of past convictions. United States v. Coleman, 137 U.S.App.D.C. 110, 420 F.2d 1313, 1316 (1969); Weaver v. United States, 133 U.S.App.D.C. 66, 408 F.2d 1269, cert. denied, 395 U.S. 927, 89 S.Ct. 1785, 23 L.Ed.2d 245 (1969); Gordon v. United States, 127 U.S.App.D.C. 343, 383 F.2d 936 (1967), cert. denied, 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968). If the court's ruling is adverse to him, the defendant may then elect whether he desires to testify and subject himself to impeachment.

Judge McGowan, speaking for the Luck majority, noted that the exercise of a court's sound discretion in excluding such impeachment evidence on occasion may promote the interests of justice:

> There may well be cases where the trial judge might think that the cause of truth would be helped more by letting the jury hear the defendant's story than by the defendant's foregoing that opportunity because of the fear of prejudice founded upon a prior conviction. There may well be other cases where the trial judge believes the prejudicial effect of impeachment far outweighs the probative relevance of the prior conviction to the issue of credibility. This last is, of course, a standard which trial judges apply every day in other contexts; and we think it has both utility and applicability in this field. 348 F.2d at 768. (Footnotes omitted.)

Although the Luck decision rests upon a special statutory provision applicable only to the District of Columbia, other circuits have adopted its rationale, at least in part. United States v. Allison, 414 F.2d 407, 411–412 (9th Cir.), cert. denied, 396 U.S. 968, 90 S.Ct. 449, 24 L.Ed.2d 433 (1969); United States v. Greenberg, 419 F.2d 808, 809 (3d Cir. 1969); United States v. Palumbo, 401 F.2d 270, 274 (2d Cir. 1968), cert. denied, 394 U.S. 947, 89 S.Ct. 1281, 22 L.Ed.2d 480 (1969); semble, United States v. Perea, 413 F.2d 65, 68 (10th Cir. 1969), cert. denied, 397 U.S. 945, 90 S.Ct. 960, 25 L.Ed.2d 125 (1970); United States v. Hildreth, 387 F.2d 328, 329 (4th Cir. 1967).[2]

---

1. District of Columbia Circuit cases subsequent to Luck are collected in the appendix to Weaver v. United States, 133 U.S.App.D.C. 66, 408 F.2d 1269, cert. denied, 395 U.S. 927, 89 S.Ct. 1785, 23 L.Ed.2d 245 (1969). More recent cases include United States v. McCord, 137 U.S.App.D.C. 5, 420 F.2d 255 (1969); United States v. Coleman, 137 U.S.App.D.C. 110, 420 F.2d 1313 (1969); Gass v. United States, 135 U.S.App.D.C. 11, 416 F.2d 767 (1969).

2. In Bendelow v. United States, 418 F.2d 42 (5th Cir. 1969), a divided court declined to adopt such a rule.

I find nothing inconsistent in *Luck* and our rule that permits the trial judge broad discretion in controlling the scope and extent of cross-examination in criminal cases. See, e. g., United States v. Dickens, 417 F.2d 958, 959 (8th Cir. 1969); Bass v. United States, 326 F.2d 884, 890 (8th Cir.), cert. denied, 377 U.S. 905, 84 S.Ct. 1164, 12 L.Ed.2d 176 (1964); Segal v. United States, 246 F.2d 814, 819 (8th Cir.), cert. denied, 355 U.S. 894, 78 S.Ct. 269, 2 L.Ed.2d 192 (1957).

I join in affirming since the record in this case reflects no abuse of discretion by the court in ruling upon the questioned evidence.