Filed 4/28/21  P. v. Gutierrez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHARLES GUTIERREZ,<br><br>    Defendant and Appellant. | H047384<br>(Monterey County<br>Super. Ct. No. SS170495A) |

A jury convicted defendant Charles Gutierrez of willful, deliberate, and premeditated first degree murder.  (Pen. Code, §§ 187, 189.[1])  The jury found true allegations that, in the commission of the murder, defendant personally and intentionally discharged a firearm, causing death (§ 12022.53, subd. (d)) and that defendant committed the murder for the benefit of a criminal street gang (§ 186.22, subd. (b)(1) & (5)).  Defendant admitted he had served a prior prison term.  (§ 667.5, subd. (b).)

Defendant was sentenced to an indeterminate term of 25 years to life for the murder and a consecutive indeterminate term of 25 years to life for the firearm allegation, for an aggregate prison term of 50 years to life.  The trial court stayed or struck the prior prison term enhancement.

On appeal, defendant contends the trial court erred by failing to instruct the jury that a witness referred to as "John Doe Three" was an accomplice as a matter of law.  Defendant also requests this court independently review the sealed transcripts from an

---

[1] Unspecified section references are to the Penal Code.

in camera hearing. Additionally, defendant contends—and the Attorney General concedes—that the prior prison term enhancement should be stricken.

As explained herein, the trial court did not prejudicially err by declining to instruct the jury that John Doe Three was an accomplice as a matter of law. We find defendant forfeited any objection to the trial court's ruling following the in camera hearing, and in any event we find no error based on our own review of the sealed transcript of the in camera hearing. The record is unclear as to whether the trial court stayed or struck the prior prison term enhancement, so for clarity we will order that enhancement stricken.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     *The Shooting of Eliot Cerna*

On August 7, 2015, Eliot Cerna, age 22, was visiting some of his family at a Salinas trailer park: his cousins, John Doe One and John Doe Two; his aunt, Azucena Cerna; and Azucena's brother-in-law, Francisco Garcia. At the time, John Doe One was an adult; John Doe Two was 10 years old.

At some point in the evening, the three cousins left to go get food. John Doe One drove Azucena's white Honda. Eliot was in the front passenger seat and John Doe Two was in the back of the car.

John Doe One had grown up with friends who were Sureño gang members, and he had a criminal history that included several felony convictions. John Doe One was aware that some Norteño gang members, including Antonio Torres, lived in the trailer park.

When the Honda passed by the Torres family's trailer, some males approached. A person on the passenger side of the Honda asked the cousins if they "bang[ed]" and told John Doe One to roll the window down. John Doe One heard a banging sound from the back of the car, and he tried to drive away. He then heard a shot and saw broken glass. He did not see the shooter's face.

John Doe Two similarly heard someone approach the passenger side of the Honda and ask if the cousins "bang[ed]." That person was the shooter. The shooter touched the

2

car above the passenger side window, in an apparent attempt to stop the car from driving away.

John Doe One realized Eliot had been shot, so he drove to the hospital. An autopsy determined that Eliot had suffered a penetrating gunshot wound that entered and exited his arm and then entered his torso, where it perforated several organs and caused his death.

## B. *Investigation*

A trajectory reconstruction revealed two bullets had been fired into the Honda from the area near the passenger side front door.

Fingerprints were lifted from the Honda. Two prints found on the passenger side roof line matched defendant's left middle finger and left ring finger. One print matched Francisco Garcia. Three other prints did not match "anyone in the system."

Azucena did not know defendant. She always parked her Honda next to her trailer. Garcia was with her on the night of the shooting, from the time the three cousins left the trailer until she went to the hospital.

Defendant was a cousin of the Torres family. When his fingerprints came back as a match from the Honda, the police strongly suspected him to be the shooter but continued to investigate. Defendant was arrested after John Doe Three, an in-custody informant, provided further information.

## C. *Testimony of John Doe Three*

At the time of trial, John Doe Three was in custody. In one pending case, he had been charged with premeditated and deliberate attempted murder, with a gang allegation and personal firearm use allegation, but he had reached an agreement with the District Attorney's office: he would plead guilty to assault with a semiautomatic firearm (§ 245, subd. (b)) and active participation in a criminal street gang (§ 186.22, subd. (a)), and admit a personal firearm use allegation. If John Doe Three testified truthfully at defendant's trial, he would face a maximum of 12 years in prison. If John Doe Three

3

failed to comply with the agreement, the original charges could be reinstated and he would face a life term. In a second pending case, John Doe Three faced charges of conspiracy (§ 182, subd. (a)) and assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)) with two strike allegations. John Doe Three had reached a further agreement with the District Attorney's office: he would plead to the assault charge and admit one strike, and he would face up to an additional two years in prison.

John Doe Three considered himself a "[d]rop out" Norteño gang member. He explained that in order to maintain active status, a gang member must commit crimes. Norteños are encouraged to commit violent crimes against Sureños. When a gang member asks, "What do you bang," an inadequate answer will often result in violence.

On the night that Eliot was shot, John Doe Three was at the Torres residence. Antonio Torres, his best friend, had been murdered, and about 20 people were present for a celebration of life. Defendant, known as "Trigger," was present. Both defendant and John Doe Three had guns.

John Doe Three believed John Doe One to be a Sureño, and the group that was gathered at the Torres residence talked about being suspicious of John Doe One when he drove by the Torres residence more than once that evening.

Just before the shooting, John Doe One drove past the Torres residence and slowed down because of a speed bump. Several people approached and asked where he was from. Most of the group remained on the driver's side of the Honda, but defendant approached the passenger side. When John Doe One responded that "he didn't bang," defendant reached into the car and fired his gun.

As the Honda started to drive away, defendant placed his body on the car, holding onto the car door with one hand, in an apparent attempt to stop it from leaving. After the shooting, John Doe Three and others cleaned up the glass from the broken car window.

John Doe Three acknowledged that he knew that violence will occur "when a group of Norteños goes and confronts and hits up a group of Sureños." He acknowledged

4

that he had his hand on his gun at the time he approached the Honda, "in case . . . something happen[ed]."

## D. *Gang Evidence*

The parties stipulated that defendant was an active member of the Salinas East Market subset of the Norteño gang. They stipulated that the Norteños are a criminal street gang, as defined in section 186.22, and that Norteños engage in a pattern of criminal activity that includes committing murders, assaults, robberies, carjackings, burglaries, illegal gun possession, and narcotics sales.

The stipulation referenced evidence of defendant's active membership in the gang: his own admissions, his gang-related tattoos, his association with other Norteño gang members, and his housing in a Norteño jail unit. A gang expert testified that defendant's specific tattoos not only showed his membership in the Salinas East Market subset, but that he had "put in work" for the gang, meaning he had committed a violent act or a significant crime that benefitted the gang.

The gang expert testified that in 2015, there was a high rate of violence stemming from the rivalry between Norteño and Sureño gang members in Salinas. He opined that gang members will often lash out at rivals after a member of their own gang has been murdered, even if the rival gang was not responsible for the murder. Gang members will ask, "What do you bang" or "Where are you from" when they perceive someone to be a gang member. "It's just something they say prior to assaulting them or causing harm." Gang members often commit crimes in front of others in order to gain status. Gang members who "snitch" are likely to get physically harmed or killed.

When a Norteño kills a Sureño, it benefits the Norteño gang in several ways. First, there is "one less rival gang member" who could assault or kill a Norteño gang member. Second, the murder instills fear in the community and the rival gang. Third, the reputation of the Norteño gang is enhanced, enabling the gang to recruit younger

5

members.  And fourth, the murder may allow the Norteño gang to sell drugs or commit other crimes in a neighborhood "without any competition."

## D.    *Verdicts and Sentence*

A jury convicted defendant of willful, deliberate, and premeditated first degree murder.  (§§ 187, 189.)  The jury found true allegations that in the commission of the murder, defendant personally and intentionally discharged a firearm, causing death (§ 12022.53, subd. (d)) and that defendant committed the murder for the benefit of a criminal street gang (§ 186.22, subd. (b)(1) & (5)).  Defendant admitted he had served a prior prison term.  (§ 667.5, subd. (b).)

Defendant was sentenced to an indeterminate term of 25 years to life for the murder and a consecutive indeterminate term of 25 years to life for the firearm allegation, for an aggregate prison term of 50 years to life.  The trial court stayed or struck the prior prison term enhancement.

## II.    DISCUSSION

### A.    *Failure to Instruct that John Doe Three was an Accomplice as a Matter of Law*

Defendant contends the trial court prejudicially erred by failing to instruct the jury that John Doe Three was an accomplice as a matter of law, whose testimony could be used to convict defendant only if it was supported by independent corroborating evidence.  Defendant asserts that John Doe Three was an accomplice under both a "direct aider and abettor" theory as well as the "natural and probable consequences doctrine."  He contends that the instructional error violated his rights to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the federal Constitution.

#### 1.    *Trial Court Proceedings*

Defendant requested that the trial court instruct the jury that John Doe Three was an accomplice as a matter of law.  (See CALCRIM No. 335.)  The People argued that John Doe Three was "not an accomplice" and thus that no accomplice instruction should

6

be given. The trial court tentatively indicated it would give "the accomplice not as a matter of law instruction" (see CALCRIM No. 334) "and let the jury decide."

Defendant argued that John Doe Three was an accomplice as a matter of law because he knew that armed gang members were approaching the car with the intent to stop the car, confront the driver, and commit a violent act on the driver; and because John Doe Three had participated in the attempt to stop the car and had been ready to shoot.

The trial court rejected defendant's argument, explaining, "That would mean everyone who was there that was armed could be prosecuted for murder." The trial court acknowledged John Doe Three had testified about having had his hand on his gun and about knowing that "violence was about to happen." However, the trial court found, John Doe Three's testimony also indicated he was concerned about needing to defend himself or a fellow Norteño gang member. Ultimately, the trial court believed, the issue of whether John Doe Three was engaging in "offensive or defensive" actions was "a question of fact for the jury to decide."

Pursuant to CALCRIM No. 334, the trial court instructed the jury as follows: "Before you may consider the testimony of (John Doe Three) as evidence against the defendant, you must decide whether (John Doe Three) was an accomplice to the crime of murder.

"A person is an accomplice if he or she is subject to prosecution for the identical crime charged against the defendant.

"Someone is subject to prosecution if: One, he or she personally committed the crime; or two, he or she knew of the criminal purpose of the person who committed the crime; and, three, he or she intended to and did in fact aid, facilitate, promote, encourage or instigate the commission of the crime.

"The burden is on the defendant to prove that it is more likely than not that (John Doe Three) was an accomplice.

7

"An accomplice does not need to be present when the crime is committed. On the other hand, a person is not an accomplice just because he or she is present at the scene of a crime, even if she or he knows that a crime will be committed or is being committed and does nothing to stop it.

"A person may be an accomplice even if he or she is not actually prosecuted for the crime.

"If you decide a witness was not an accomplice, then supporting evidence is not required, and you should evaluate his or her testimony as you would that of any other witness.

"If you decide that a witness was an accomplice, then you may not convict the defendant of murder based on his or her testimony alone.

"You may use testimony of an accomplice that tends to incriminate the defendant to convict the defendant only if: One, the accomplice's testimony is supported by other evidence that you believe; two, that supporting evidence is independent of the accomplice's testimony; and, three, that supporting evidence tends to connect the defendant to the commission of the crime.

"Supporting evidence, however, may be slight. It does not need to be enough by itself to prove that the defendant is guilty of the charged crime, and it does not need to support every fact about which the accomplice testified.

"On the other hand, it is not enough if the supporting evidence merely shows that a crime was committed or the circumstances of its commission.

"The supporting evidence must tend to connect the defendant to the commission of the crime.

"Any testimony of an accomplice that tends to incriminate the defendant should be viewed with caution. You may not, however, arbitrarily disregard it. You should give that testimony the weight you think it deserves after examining it with care and caution and in light of all the other evidence."

8

During argument to the jury, the prosecutor called John Doe Three the "most important witness." The prosecutor acknowledged that John Doe Three had been armed and present during the shooting.

Defendant argued that the jury should find that John Doe Three was an accomplice. Defendant argued that John Doe Three knew that the driver of the Honda was a Sureño and that after the driver was asked "what he bangs," John Doe Three knew that "someone was about to get shot." Defendant argued that by standing in front of the Honda to "make it stop," John Doe Three was aiding the murder.

Defendant then argued that John Doe Three's testimony was not corroborated by any other evidence. In fact, defendant argued, John Doe Three's testimony conflicted with other evidence. For instance, John Doe Three testified that defendant reached into an open window of the Honda to shoot, but the shattered car window showed that the shots were fired from outside the car when the window was still rolled up.

In closing argument, the prosecutor asserted that John Doe Three was "not an accomplice to murder." She argued, "Mere presence at a crime scene does not make someone an accomplice." At most, she asserted, John Doe Three's assistance in cleaning up the broken glass made him an accessory after the fact. The prosecutor further argued that even if the jury found that John Doe Three was an accomplice, his testimony was corroborated by John Doe Two's testimony and the evidence showing that defendant's fingerprints were found on the Honda.

2.    *Applicable Law*

Section 1111 provides: "A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. An accomplice is hereby defined as one who is liable to prosecution for the identical offense

9

charged against the defendant on trial in the cause in which the testimony of the accomplice is given."

The evidence corroborating an accomplice's testimony "may be slight, entirely circumstantial, and entitled to little consideration when standing alone. [Citations.] It need not be sufficient to establish every element of the charged offense or to establish the precise facts to which the accomplice testified. [Citations.] It is 'sufficient if it tends to connect the defendant with the crime in such a way as to satisfy the jury that the accomplice is telling the truth.' " (*People v. Valdez* (2012) 55 Cal.4th 82, 147-148.)

"Whether a person is an accomplice within the meaning of section 1111 presents a factual question for the jury 'unless the evidence permits only a single inference.' " (*People v. Williams* (1997) 16 Cal.4th 635, 679 (*Williams*).) A trial court may instruct the jury that a particular witness is an accomplice if "the facts regarding the witness's criminal culpability are 'clear and undisputed' " (*id*. at p. 679) but correctly leaves the question for the jury if the evidence of the witness's criminal culpability is "not so clear and undisputed that a single inference could be drawn that [he or she] would be liable for the '*identical offense*[*s*]' charged against [the] defendant." (*Id*. at p. 680.)

3.    *Analysis*

"Whether or not to give any particular instruction in any particular case entails the resolution of a mixed question of law and fact," which is a "predominantly legal" question that "should be examined without deference" under the de novo standard of review. (*People v. Waidla* (2000) 22 Cal.4th 690, 733.)

i.    **Direct Aiding and Abetting**

Defendant first argues that John Doe Three was a direct aider and abettor to the murder: that is, a person who "with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aid[ed], promote[d], encourage[d] or

10

instigate[d], the commission of the crime." (See *People v. Beeman* (1984) 35 Cal.3d 547, 561.)

"Mere presence at the crime scene is, by itself, not aiding and abetting, but it can be one factor among others that support conviction as an aider and abettor. [Citation.] 'Among the factors which may be considered in determining aiding and abetting are: presence at the crime scene, companionship, and conduct before and after the offense.' " (*People v. Sedillo* (2015) 235 Cal.App.4th 1037, 1065 (*Sedillo*).)

Defendant contends that other cases have found that a person aided and abetted murder on weaker facts than in this case. The two cases he discusses are of marginal relevance, however, as neither involved the question of whether a person was an accomplice as a matter of law. Both cases discussed whether the evidence was sufficient to sustain the defendants' convictions under an aiding and abetting theory. (See *Sedillo*, *supra*, 235 Cal.App.4th at pp. 1065-1066; *People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 295-297.) In *Sedillo*, the defendant knew her codefendant was armed, participated in surveilling the residence where the victims were shot, and drove the getaway car after the shooting. (*Sedillo*, *supra*, at p. 1066.) In *Gonzales and Soliz*, not only did defendant Gonzales know and share defendant Soliz's intent to murder or assault the victims, but he "acted to encourage the shootings by providing armed backup to Soliz." (*Gonzales and Soliz*, *supra*, at p. 295.)

In the instant case, the question is not whether the evidence supports a conviction of John Doe Three as an aider and abettor, but whether the evidence establishing John Doe Three's criminal culpability for murder is " 'clear and undisputed.' " (See *Williams*, *supra*, 16 Cal.4th at p. 679.) A reasonable jury *could* have found that John Doe Three knew of defendant's unlawful purpose; intended to encourage or facilitate the murder; and aided, promoted, encouraged or instigated the commission of the murder by being part of the group that approached the Honda and tried to stop it. However, a reasonable jury also could have found that John Doe Three did not know of defendant's unlawful

11

purpose or intend to encourage or facilitate the murder. John Doe Three testified that he was "suspicious" of John Doe One and that he had his hand on his gun "in case . . . something happen[ed]," indicating he believed that John Doe One might initiate an assault on the Norteño group, which would necessitate a defensive response. Because the evidence did not " 'permit[] only a single inference,' " John Doe Three was not a direct aider and abettor as a matter of law. (See *Williams*, *supra*, at p. 679.)

### ii.     Natural and Probable Consequences Doctrine

Asserting that he was charged with "generic murder under section 187," defendant next contends that John Doe Three was an accomplice as a matter of law under the natural and probable consequences doctrine.

Defendant misreads the record. He was charged with and convicted of willful, deliberate, and premeditated first degree murder under sections 187 and 189. "[N]atural and probable consequences liability cannot extend to first degree premeditated murder because punishing someone for first degree premeditated murder when that person did not actually perpetrate or intend the killing is inconsistent with 'reasonable concepts of culpability.' " (*People v. Gentile* (2020) 10 Cal.5th 830, 838, quoting *People v. Chiu* (2014) 59 Cal.4th 155, 165, 166.) John Doe Three cannot, therefore, be an accomplice as a matter of law under this doctrine.[2]

### iii.     Corroboration/Prejudice

Even assuming the trial court was required to instruct the jury that John Doe Three was an accomplice as a matter of law, there was no prejudice. "A trial court's failure to instruct on accomplice liability under section 1111 is harmless if there is sufficient corroborating evidence in the record." (*People v. Lewis* (2001) 26 Cal.4th 334, 370

---

[2] Because we find the natural and probable consequences doctrine was not applicable, we need not determine which version of the natural and probable consequences doctrine would apply. (See *Gentile*, *supra*, 10 Cal.5th at pp. 842-843 [discussing Senate Bill No. 1437 (2017-2018 Reg. Sess.)].)

(*Lewis*).)  As noted previously, " '[c]orroborating evidence may be slight, may be entirely circumstantial, and need not be sufficient to establish every element of the charged offense.  [Citations.]'  [Citation.]  The evidence 'is sufficient if it tends to connect the defendant with the crime in such a way as to satisfy the jury that the accomplice is telling the truth.' "  (*Ibid*.)

Defendant acknowledges that his fingerprints were found on the Honda,[3] but he points out that other fingerprints were found there as well.  He suggests that a reasonable juror could have found that defendant "had touched the car at some point" earlier in time rather than during the shooting incident.

Defendant relies on *People v. Robinson* (1964) 61 Cal.2d 373.  In *Robinson*, three codefendants were convicted of murder.  (*Id*. at p. 377.)  The trial court had failed to instruct the jury that one of the codefendants was an accomplice as a matter of law and that his testimony implicating the other codefendants had to be corroborated.  (*Id*. at p. 394.)  The California Supreme Court determined that there was insufficient corroboration as to one of the codefendants.  Although that codefendant's fingerprints were found in a car associated with the murder, it was undisputed that the codefendant had numerous opportunities to place his fingerprints on the vehicle under circumstances that were "entirely unconnected to the crime."  (*Id*. at p. 399.)

Unlike in *Robinson*, where the codefendant had a preexisting relationship with the owner of the car, here it would have been entirely speculative for the jury to find that defendant had touched the Honda some time prior to the incident.  The evidence established no preexisting relationship between defendant and the Honda owner, Azucena

---

[3] Defendant incorrectly asserts that only one of his fingerprints was found on the car.  A Department of Justice latent print analyst testified that prints from the Honda matched defendant's left ring finger *and* his left middle finger.  Defendant also incorrectly asserts that the fingerprint was "contaminated."  A criminalist testified that he did "a second lift" of the same fingerprint because "a lot of contaminates," meaning air bubbles or dust or dirt, came up with the first lift.  No testimony indicated that the second lift was contaminated in any way.

13

Cerna, or any of her family members who drove her car. Moreover, defendant's fingerprints were found in the specific area of the Honda that John Doe Two described as having been touched by the shooter. This evidence " 'tends to connect the defendant with the crime in such a way as to satisfy the jury that the accomplice is telling the truth.' " (*Lewis*, *supra*, 26 Cal.4th at p. 370.)

The out-of-state cases defendant discusses are also distinguishable. In the first case, *State v. Foster* (2008) 221 Ore.App. 108, the defendant's fingerprint on a digital scale in his own apartment failed to sufficiently connect him with drugs found in a car driven by the other occupant of the apartment. (*Id.* at pp. 113-114.) The second case, *Borum v. United States* (1967) 380 F.2d 595, held that it would be speculative to find that the defendant committed a "housebreaking" based solely on his fingerprints having been found on glass jars in the residence. (*Id.* at p. 595; cf. *United States v. Scarpellino* (1970) 431 F.2d 475, 478 [questioning validity of *Borum*].) And in the third case, *State v. Payne* (1982) 186 Conn. 179, the defendant's fingerprint was found on his brother's car and thus not "under such circumstances that they could only have been impressed at the time the crime was perpetrated." (*Id.* at p. 182.)

Here, as previously stated, there was evidence that defendant's fingerprints were found on the Honda in the location that John Doe Two described as having been touched by the shooter. There was nothing to suggest that defendant could have placed his hands on the Honda at a previous time. Moreover, there was evidence that defendant was a Norteño gang member and evidence that the crime was gang related. John Doe Two testified that the shooter asked if the cousins "bang[ed]." John Doe One similarly testified that a person on the passenger side of the Honda asked the cousins if they "bang[ed]." The gang expert testified that "What do you bang" is a common question asked by a gang member who perceives someone else to be a gang member, "prior to assaulting them or causing harm."

14

With respect to the gang evidence, defendant contends there is less independent corroboration here than in *People v. Pedroza* (2014) 231 Cal.App.4th 635. In that case, the "nonaccomplice testimony . . . established only that [the] defendant had a general connection to the victim and other perpetrators—shared gang membership—and he was seen associating with the other perpetrators after the murder, away from the crime scene." (*Id*. at p. 651.) There was "no evidence about [the] defendant's acts or conduct" at the time of the crime. (*Ibid*.) In the instant case, by contrast, there *was* evidence connecting defendant to the actual shooting: the testimony of John Doe Two that the shooter touched the passenger side of the Honda above the door, and the evidence that defendant's fingerprints were found on the Honda's passenger side roof line.

In sum, even assuming the trial court should have instructed the jury that John Doe Three was an accomplice as a matter of law, there was "sufficient corroborating evidence in the record," and thus any error was harmless. (See *Lewis*, *supra*, 26 Cal.4th at p. 370.)

**B.** **Sealed Records Review**

Defendant requests this court independently review documents and testimony that the trial court reviewed at an in camera hearing and "determine whether the trial court ruled correctly" when it ordered the prosecutor to provide the defense with a redacted summary of statements made by a witness.

**1.** **Trial Court Proceedings**

Before defendant's trial began, the People filed a request for an in camera hearing, citing section 1054.7.[4] The People explained that they had "been made aware of statements relating to this case" and that "[d]ue to the nature of the evidence," the People would "present the Court with the particulars" at an in camera hearing. On April 17, 2019, the trial court held a hearing at which it set a date for the in camera hearing.

---

[4] Section 1054.7 provides in pertinent part: "Upon the request of any party, the court may permit a showing of good cause for the denial or regulation of disclosures, or any portion of that showing, to be made in camera."

15

The trial court held an in camera hearing on April 24, 2019.[5] Only the prosecutor was present. The trial court represented that it had previously met with both counsel in chambers "about the nature of this issue" and had "discussed it at length." The trial court stated its intention to meet with both counsel again before ruling.

The prosecutor explained that she would be presenting evidence of potentially exculpatory statements made by a non-testifying witness. The trial court told the prosecutor she should write up "a brief summary of what [the] witness would say if called to testify and provide that to the Defense under some kind of protective order."

The in camera hearing then proceeded, with testimony from one witness. The trial court did not review any documents during the hearing. At the end of the hearing, the trial court against stated it would "rule on this at the pretrial" and that before making any ruling it would hold a further discussion about the matter with defendant's trial counsel present.

On May 3, 2019, an unreported in chambers discussion occurred with both counsel present. Following the in chambers discussion, trial court ordered the People to provide defendant with "a redacted summary of the statement of the witness that we had been talking about." Defendant did not object at that time, nor did he later object to the redacted summary that was apparently provided.

### 2. *Proceedings in this Court*

When the original record on appeal was filed, it did not include a transcript or any other records from the in camera hearing. Defendant requested this court order the appellate record augmented with a sealed clerk's transcript of any records or information

---

[5] The original record on appeal did not reflect that the in camera hearing was set for or heard on April 24, 2019. Thus, in their original briefs, the parties assumed that the in camera hearing was held on May 3, 2019, which was the date of the trial court's subsequent ruling.

16

reviewed and considered by the trial court during the in camera hearing, and a sealed reporter's transcript of the in camera hearing.

This court ordered the trial court to prepare the requested augmentation and to file it under seal. The trial court clerk responded by certifying that a complete and accurate copy of the entire case file had previously been transmitted. The trial court also filed an augmented reporter's transcript that reflected the order made by the trial court, in open court, following the May 3, 2019 chambers discussion. No transcript of an in camera hearing was provided, and no documents were provided under seal.

This court then ordered the trial court to prepare a settled statement regarding the in camera hearing. In response, the trial court provided a sealed reporter's transcript of the April 24, 2019 in camera hearing and a minute order from a hearing held on March 19, 2021. The minute order from the March 19, 2021 hearing states: "All parties agree that there were no documents under seal as to that matter and the Court did not review any documents during the in-camera hearing held on 4-24-2019 or during the Ruling on the in-camera hearing held on 5-3-2019."

After receiving the sealed reporter's transcript and the March 19, 2021 minute order, this court requested the parties submit supplemental briefing on the question of whether defendant forfeited any issue regarding the in camera hearing and redacted witness summary.

3.     *This Court's Review*

As defendant points out, "the due process clause requires the 'government' to give the accused all 'material' exculpatory evidence 'in its possession,' even where the evidence is otherwise subject to a state privacy privilege, at least where no clear state policy of 'absolute' confidentiality exists. [Citation.] When the state seeks to protect such privileged items from disclosure, the court must examine them in camera to determine whether they are 'material' to guilt or innocence." (*People v. Webb* (1993) 6 Cal.4th 494, 518 (*Webb*).) On appeal, an appellate court may be requested to

17

"independently examin[e]" the material the trial court considered in camera to determine whether the trial court's ruling was correct. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1232.)

In the instant case, the trial court held an in camera hearing during which it heard testimony from a witness but did not review any documents. The trial court made no ruling immediately following the in camera hearing. The trial court held an unreported in chambers discussion with both parties and then put its ruling on the record in open court, ordering the prosecution to provide the defense with "a redacted summary of the statement of the witness that we had been talking about." Defendant did not object at that time, nor did he object after receiving the redacted witness summary.

"Ordinarily, an appellate court will not consider a claim of error if an objection could have been, but was not, made in the lower court. [Citation.] The reason for this rule is that '[i]t is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided.' " (*People v. French* (2008) 43 Cal.4th 36, 46.)

Defendant's failure to object after the in chambers discussion strongly suggests that defendant consented to the trial court's order that the prosecution provide a redacted witness summary. Likewise, defendant's failure to object after receiving the redacted witness summary strongly suggests that defendant found the redacted witness summary to be adequate. By failing to object, defendant forfeited any challenge to the trial court's order and to the redacted witness summary. (See *People v. Tully* (2012) 54 Cal.4th 952, 1056 [defendant forfeited challenge to trial court's response to jury request because he failed to object when the trial court stated that, during an unreported bench conference, both counsel had " 'agreed' " to the response].)

Defendant's failure to object also necessarily constrains this court's ability to review the trial court's ruling. Because defendant failed to object at the May 3, 2019 hearing, the record does not contain any information about what information the trial

18

court ordered redacted from the witness summary. Because defendant failed to raise any objection to the redacted witness summary provided by the prosecution, the summary is not part of the record on appeal.

Having conducted a "careful review" of the limited materials that *are* part of the appellate record (*Webb*, *supra*, 6 Cal.4th at p. 518), we find no error in the trial court's determination that some redaction of the witness summary was necessary.

## C. *Prior Prison Term Enhancement*

At defendant's sentencing hearing, the trial court indicated that it was going to "impose the one year" for the section 667.5, subdivision (b) prior prison term enhancement, "but stay or strike that." The minute order reflects that the enhancement was stayed pursuant to section 654. However, the enhancement is not reflected on the abstract of judgment.

Defendant contends, and the Attorney General agrees, that the prior prison term enhancement should be stricken because defendant is entitled to the retroactive benefit of Senate Bill No. 136 (Stats. 2019, ch. 590, § 1), which amended section 667.5, subdivision (b) "such that a one-year enhancement for a prior prison term shall be imposed only if the prior term was for a sexually violent offense." (*People v. Winn* (2020) 44 Cal.App.5th 859, 872.)

As noted, the record is somewhat unclear as to whether the prior prison term enhancement was imposed but stayed, or whether it was stricken. For clarity of the record, we will order the trial court to strike the enhancement.

## III. DISPOSITION

The judgment is reversed. The trial court is ordered to strike the Penal Code section 667.5 allegation, prepare a new minute order, and reinstate the judgment.

19

_____

                                          Cogliati, J.*


WE CONCUR:




_____

        Elia, Acting P.J.




_____

        Bamattre-Manoukian, J.






People v. Gutierrez
H047384

_____

     * Judge of the Santa Cruz County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.